Dobbs *v.* Norcross.

## DOBBS *vs.* NORCROSS.

1. Equity will never compel a purchaser to take a doubtful title, which can only be settled by litigation, or where the purchase would expose him to the hazard of such proceedings.

2. That may be a good title at law, which a court of equity in the exercise of its discretion, will not force on an unwilling purchaser.

3. Every purchaser of land has a right to demand a title which shall put him in all reasonable security, and which shall protect him from

apprehension of suits. He should have a title which will enable him, not only to hold his land, but to hold it in peace; and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value.

On final hearing, on pleadings and proofs.

*Mr. J. M. Scovel,* for complainant.

*Mr. F. Kingman,* for defendant.

THE CHANCELLOR.

This is a suit for specific performance of an agreement made January 14th, 1871, between the parties, for exchange of lands, certain real estate of the defendant, in the county of Burlington in this state, for a certain farm in Forrest county, Pennsylvania.

The answer sets up fraudulent misrepresentations on the part of the complainant, as to the land he proposed and agreed thereby to convey, or cause to be conveyed, and want of title, either on the part of the complainant or of his son, J. Benson Dobbs, in the property.

Unless the grantor in the deed tendered to the defendant by the complainant, for the land in Pennsylvania, has a good title to that property, this court will not require the defendant to accept it. It appears, from the complainant's testimony, that he at one time owned the land, and that, while he was such owner, it was sold under a judgment against him, and at the sheriff's sale was purchased by James W. Daniels, to whom the sheriff conveyed it by deed, dated February 28th, 1860. It appears, also, that the complainant made an agreement with Daniels, who testifies that he bought the property in for the complainant, for the redemption of the property, and that, accordingly, on the 18th of June, 1860, the complainant paid Daniels $160, and the latter gave him a receipt therefor, in which, acknowledging the receipt of the money as from J. B. Dobbs, the son of this complainant, he agreed to convey the property to J. B.

Dobbs, the latter to pay him, at the delivery of the deed, any additional costs or expense he might incur over the amount of his bid at the sheriff's sale. The bid was about $155. By endorsement dated September 18th, 1862, on this paper, J. B. Dobbs directed Daniels to deliver the deed to the complainant, or J. H. Dobbs.

Subsequently, in 1863, the premises were again sold as the complainant's property, by the sheriff, under an execution issued against the complainant on another judgment recovered in 1862. At this sale, they were purchased by Daniels for $295. The sheriff executed a deed, dated January 12th, 1863, to Daniels, for the property, in pursuance of that purchase. It appears, also, that Daniels never has conveyed the property to the complainant, nor to J. B. Dobbs or J. H. Dobbs, but has refused to convey it. The legal title to the premises is in Daniels, unless certain proceedings, which took place in March, 1866, whereby the complainant claims that a patent was issued by the State of Pennsylvania to J. B. Dobbs for the property, supersedes it. Whether it does so or not, it is not necessary to determine in this suit. It is evident that the title is not free from very serious doubt, and that the complainant cannot give possession. Lands in Pennsylvania do not escheat or revert to the state, merely because the right owner of them chooses to leave them unoccupied for two years. From the papers exhibited by the complainant, it appears that the patent referred to was obtained on the ground that the land was land which had been improved since 1848, and had not had any person residing thereon for the two years last preceding the application for the warrant to survey'; that is, that it was land the title whereto was in the state, and which had been improved and abandoned by the settler or improver. The complainant was, as appears from his own testimony, the owner of the land when it was sold by the sheriff to Daniels, under the first judgment, and by that sale the legal title passed to the latter. How could the land, without the consent of Daniels, be treated as public land? A patent issued in such case

would enure to the benefit of the owner of the legal title. There is no evidence before the court, that the state had, subsequently to the sheriff's sale, acquired title to the land in any way. Besides, the land appears not to have been unoccupied at the time of the application for the warrant; but, on the other hand, Daniels seems to have taken especial care to keep possession of the premises. By lease, dated April 1st, 1864, he leased the property to Thomas Nugent for ten years, at $10 a year, under which Nugent testifies he had taken charge of the property, to some extent, ever since, until the time when he was sworn as a witness in this cause, May, 1872, and that Daniels had exercised acts of ownership over the place ever since the first sheriff's sale. Daniels testifies that he took possession of the property under the sheriff's deed of 1863, after the sale, and has ever since had title and possession of the property, and regularly paid the taxes on it; that he still has the possession; that he has neither mortgaged nor made any conveyance of the property; that the title conveyed to him by the sheriff, under the last deed, still remains in him; that he leased the property, in 1864, to Nugent, who has occupied it ever since; and that J. Benson Dobbs has never, to his knowledge, had any title to the property. He adds that no one can get possession of that property except by his permission, unless by a suit at law, and that he will "fight a suit to the bitter end;" that the only way to get possession against him, is by law; and that he claims to hold this property in the same way he does any other of his farms, and considers that he has as good a title to that as he has to any of them, and that he means to stand by it.

The contract between these parties expressly provides that possession of the exchanged property shall be given at the delivery of the deed. The court will never compel a purchaser to take a title where the point on which it depends is too doubtful to be settled without litigation, or where the purchase would expose him to the hazard of such proceedings; or, as it is usually expressed, it will not compel him to buy a

law suit. That may be a good title at law, which a court of equity in the exercise of its discretionary power, will not force on an unwilling purchaser. Every purchaser of land has a right to demand a title which shall put him in all reasonable security, and which shall protect him from anxiety, lest annoying, if not successful suits be brought against him, and probably take from him or his representatives, land upon which money was invested. He should have a title which shall enable him not only to hold his land, but to hold it in peace; and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value. 2 *Parsons on Contracts* 564.

The title which the complainant seeks by this suit to compel the defendant to accept, is not such a one as the court, in the exercise of its discretion, will require him to take.

The bill is dismissed, with costs.