ABIGAIL R. DOUGHTEN et al., appellants,

*v.*

CAMDEN BUILDING AND LOAN ASSOCIATION, respondents.

JOHN C. DOUGHTEN et al., appellants,

*v.*

CAMDEN BUILDING AND LOAN ASSOCIATION, respondents.

One party to a contract which imposes reciprocal obligations upon both parties, may have a right to rescind it by reason of the failure of performance of conditions by the other party, but he must, if he wish to rescind for such cause, return to the other party what he has received, so as to put him in the same condition he was before.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions :

The complainant held two mortgages on two lots of the defendant.

She allowed the accruing payments to fall in arrears. She also allowed the taxes and assessments to remain unpaid. The payments which she had made on the loans reduced the amount due from her to about $2,600. At this juncture she offered to assign and transfer so much of the stock as represented the payments which she had made to the corporation, and give a new mortgage for all the balance due on both properties. The company agreed to accept this offer, provided the defendant would discharge all the taxes and other assessments. The company passed a resolution to this effect. A settlement was had between the parties determining the amount of the balance actually due from the mortgagor. The defendant, the mortgagor, assigned the stock accordingly. It ought to be remarked that all the stock was of a certain value. The solicitor of the corporation was directed to draw a mortgage in compliance with the terms of the agreement. He did so, and it was executed by the defendant and recorded. All this was done, but the defendant did not discharge the liens by way of taxes and other assessments. These not being discharged, the company rescinded the resolution and directed a foreclosure of the two original mortgages. After this had been done, and before the bill was filed, the defendant paid the taxes and other liens.

The defendant now insists that this bill should be dismissed; that the court should compel the complainant to regard the agreement and settlement; and that she has a just defence to this bill under said agreement.

In the first place, I am not at all clear that there is any consideration shown for the alleged agreement. The defendant paid nothing but what was her duty to pay; she owed every dollar of it. It is true she did not owe it all at that particular time, but the then value of the stock was ascertained and that value was applied to the payment of the principal of the mortgages and all the dues that remained unpaid.

This does not, in my judgment, present a consideration. The company got what was due to it at that time; that is, what was

actually due, and what was due by anticipation, determined by the then value of the stock.

In the next place, the defendant did not comply with the agreement on her part until after the association had withdrawn therefrom. The association had a perfect right to rescind the contract, the defendant herself being at fault. The complainant reaps no advantages from the rescission, nor does the defendant suffer. She is placed just where she stood at the time negotiations began. The association then had the right to foreclose, and in so doing would have been obliged to apply the stock at its value to the payment of the amount. This will still be done.

The amount due upon the mortgages on February 10th, 1881, was $2,600. The complainant is entitled to interest and dues, according to the rules and by-laws of the association, from that time.

I will advise a decree in accordance with these views.

Two cases were argued together. Separate bills were filed to foreclose two mortgages, one for $3,000, the other for $1,800, on distinct lots of land in the city of Camden.

William S. Doughten was a shareholder in the association, having fifteen shares on which the loan of $3,000 was made, and nine shares on which the other loan had been made to one Elisha Shaw for $1,800. He owned both lots of land covered by the separate mortgages. The shares, when fully paid up, were valued at $200 each, and would satisfy the mortgages. On January 4th, 1881, the following entry appears in the minutes of the association:

"Mr. William S. Doughten made a proposition through the secretary, stating that he wished to straighten up his accounts with the association by making a new transaction and canceling the old mortgages on the properties Seventh and Mount Vernon and 528 Liberty street.

"The matter was considered by the board and the transaction accepted; loan on thirteen shares of the fourteenth series to be considered as bought at eight per cent. premium—both properties to be included in one mortgage. (For description of property see minutes of February 3d, 1880).

"Mr. Doughten's proposition was accepted. An order for $2,392 was directed to be drawn in favor of William S. Doughten upon the delivery of the required papers."

The required papers were a bond and mortgage for $2,600, covering both lots. These were duly executed February 10th, 1881. They were drawn and the mortgage recorded by George W. Gilbert, the solicitor of the association, and as he testifies, "in the regular course of business, and as it is my custom to do in all cases," searches were ordered by him up to the date of record.

Another requirement was that the fifteen and nine shares of stock—in all twenty-four shares—covering the two loans, should be assigned. These were transferred in writing, for William S. Doughten, by J. C. Doughten and Isaac Doughten, his attorneys in fact, to one William B. Mulford, by deed of assignment, dated February 1st, 1881, according to the direction of the association.

Henry F. Geiter, secretary of the association, testified that "the old roll-book No. 2 shows that Doughten had thirteen loans bought out and several monthly payments made thereon." These were in the fourteenth series, which commenced to run in July, 1880.

The searches disclosed that the $2,600 mortgage would be the first mortgage after the two former mortgages were removed, but that there were unpaid taxes and assessments against the property due to the city of Camden. These taxes and assessments Mr. Doughten, or his sons acting for him, promised to settle. The solicitor testifies that everything they were to do was arranged except the taxes and the expenses of the papers and searches.

On May 26th, 1881, a statement of account was made by the secretary, at the request of J. C. Doughten, acting for his father's estate, in which appears a debit for the thirteen shares of new stock and dues for the same, January, 1881, $26, and for May, $26 less a credit of $9.25, the balance of the general credit, which includes the twenty-four shares of stock to be delivered and surrendered, and the thirteen loans at eight per cent. premium on the thirteen shares—the final balance due at June meeting, 1881, being $43.59. For this balance ($43.59) a check was given by J. C. Doughten, agent, June 27th, 1881, which was paid at the First National Bank of Camden to the credit of F. P. Mulford, treasurer of the Camden Building and Loan Association.

From this statement of balance, and check therefor, it appears that all was settled up to June, 1881, except the taxes and assessments against the property mortgaged.

The $2,600 mortgage settled the two former mortgages, leaving an excess of $9.25, which was credited in the final statement. Doughten paid, in February, 1881, $26, the regular dues on these shares, the same in March, also in April, missed the month of May, and in June paid the balance due for May and June of $43.59, above stated. All were credited, at the time they were paid, to the fourteenth series of the new loan. Afterwards he attended two meetings, tendered payment, and the association refused to accept it on the new transaction on which he offered it. The association offered to take it on the old transaction, but he would not consent. With the expectation that the whole thing would go through, the stock was transferred, as collateral, to the association when the last papers were made.

After June, 1881, the association transferred the whole amount of money paid on the thirteen shares to the nine shares of the seventh series, a part of the stock of the old loan. It was done by the directors without consulting Mr. Doughten, he wishing to keep the new loan alive by offering to pay the dues as he had been doing.

J. C. Doughten testifies that at the time the last loan was made nothing was said about paying the municipal taxes, nor the expense of drawing the papers, searches &c.; that when his attention was called to the taxes by the solicitor he told him that he expected to pay them. Doughten was notified that they would not accept the mortgage until he paid the municipal claims, and if he did not pay them before the end of the fiscal year, on the 4th Monday in June, the transaction would fall. These taxes were paid July 30th, 1881.

The bills to foreclose the two mortgages for $3,000 and $1,800, respectively, were filed August 10th, 1881. William S. Doughten died before the bills were filed.

*Messrs. Bergen & Bergen,* for appellants.

*Mr. P. L. Voorhees,* for respondents.

The opinion of the court was delivered by

Scudder, J.

It is claimed that under these facts the association was author-
ized to rescind the resolution to substitute the bond and mort-
gage of $2,600 for the two prior mortgages, and the stock and
loan on thirteen shares for the previous loan on twenty-five
shares. But, granting that the complainant had the right to
rescind on the non-performance of the full terms of the contract
by the defendants, they failed to legally exercise that right before
there was a substantial compliance on the part of the defendants
by payment of the municipal taxes; and the bills to foreclose
were not filed until after these taxes had been paid. The con-
sideration was good, and completed before the agreement was
annulled.

One party to a contract which imposes reciprocal obligations
upon both parties may have a right to rescind it by reason of the
failure of performance of conditions by the other party, but he
must, if he wish to rescind for such cause, return to the other
party what he has received, so as to put him in the same position
he was before.

It is a well-settled principle of law and equity that a party
cannot rescind a contract by his own will, and at the same time
keep possession of the consideration, in whole or in part, which
he has received under it. So far as it is practicable, he must put
the other party *in statu quo* before he can exercise his right of
rescission. The rule is that there shall be " prompt repudiation
and restoration as far as possible." *Byard* v. *Holmes, 4 Vr.
119; Gay* v. *Alter, 102 U. S. 79; Hunt* v. *Silk, 5 East 449;
Clough* v. *London & N. W. Ry. Co., L. R. (7 Ex.) 26, 37;
Bwlch-y-Plwm Mining Co.* v. *Baynes, L. R. (2 Ex.) 324; Pol-
lock's Principles of Contracts 509; 2 Parsons Cont. *679.*

In this case the twenty-five shares of the prior loans were
transferred to the association in part performance of the agree-
ment; the mortgage for $2,600 was executed and recorded.
The assignment of shares was delivered to the treasurer of the

36

association, and the bond and mortgage were left in the possession of their solicitor.

It is no answer to say that there was not a formal acceptance of them by the association. It is enough that the defendant William S. Doughten, or his representatives, by legal transfers, put them in the possession and control of the company's agents in part performance of the contract, and in such form that he could not be restored to his former position without the action of the association.

He could not cancel the mortgage for $2,600, and satisfy the record; nor could he re-assign the twenty-five shares to himself. It might in equity be allowed that the complainants should, on failure to conclude the arrangement by the delay and neglect of the defendants, transfer the credits of the payments on account of the thirteen shares in the last loan series to the former loans, on which there were large arrearages, and the defendants could have no just cause of complaint, but it is not necessary to decide this, for the complainants have done nothing to restore the defendants to their former position, but have shown a purpose to manage the matter for their own advantage, and to regard the transaction as altogether void.

They have taken the shares of the old loans, and credited them to the defendants at their withdrawal value, not at their actual value, which is a well-known difference in the business of all loan associations; they have changed the special appropriations of· payments or the thirteen shares of the last series to the dues and the indebtedness on the old loans; they have left the assignments of those shares·in the hands of their treasurer; and the bond and mortgage for $2,600, to them duly executed, and recorded by the act of their solicitor for their greater security, is in his hands; and they have left the defendants to get these papers, and right themselves as they may be able. This is not rescission, with proper regard to the equitable rights of the defendants, but a repudiation of the partly executed contract without any attempt at restoration.

This they cannot do, and the decrees should be reversed, and the bills dismissed, with costs.

*Decree unanimously reversed.*