111 N.J. Super. 322 (1970)
268 A.2d 313
AMERICAN CONTAINER CORP., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
HANLEY TRUCKING CORP., A NEW JERSEY CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
HERSCHEL TRUCKING CO., A NEW JERSEY CORPORATION, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 31, 1970.
*326 Mr. Henry Farer for plaintiff (Farer & Krueger, attorneys).
Mr. Salvatore Burgio for defendant and third-party plaintiff.
Mr. Herbert F. Savoye, Jr. for third-party defendant.
HERBERT, J.S.C.
On March 16, 1968 Hanley Trucking Corp. arranged to purchase from Herschel Trucking Co. certain vehicles, including a used 1965 Fruehauf semi-trailer. A week later the semi-trailer was sold to American Container Corp. as a result of negotiations between American and Hanley. The purchase price of $2,800 was paid by American to Hanley; Hanley forwarded $2,500 to Herschel and retained the $300 balance. A bill of sale and certificate of legal title were given to American by Hanley. The bill of sale was written on Hanley's stationery, signed by Hanley's president, and it stated:
This is to certify that we have this date sold 1-1965 Frehauf [sic] semi trailer to your company and have received your check and said unit is paid in full.
However, legal title on the certificate was still in the name of Herschel, which had endorsed the document in blank. Hanley had never taken physical possession of the semi-trailer, but delivery was made nevertheless by Hanley from Herschel directly to American.
American enjoyed full possession and use of the semi-trailer for 16 months until July 23, 1969, when the New Jersey State Police impounded it under the authorization of N.J.S.A. 39:5-47. That statute provides in part:
The commissioner may authorize the seizure of a motor vehicle operated over the highways of this state when he has reason to believe that the motor vehicle has been stolen or is otherwise being operated under suspicious circumstances and may retain it in the name of the department until such time as the identity of ownership is *327 established, whereupon he shall order the release of the motor vehicle to its owner.
After the expiration of ninety days from the date the motor vehicle came into the possession of the commissioner by seizure or otherwise, he shall sell it at public sale, upon notice * * *.
Upon the sale of the motor vehicle all claims for interest therein shall be forever barred and the proceeds realized therefrom shall become the sole property of the state, * * *.
Less than two weeks after the seizure, American notified Hanley that it desired to rescind the contract of sale between them. American offered to assign to Hanley the receipt given for the semi-trailer by the State Police, but Hanley refused to return the $2,800 purchase price. American thereafter insttiuted this action against Hanley for rescission. Hanley in turn filed a third party complaint against Herschel, alleging that if anyone is liable to American, it is Herschel. Hanley's third party complaint was filed more than 90 days after the semi-trailer was impounded; no allegations were made or evidence adduced of any earlier demands by Hanley on Herschel. Timely answers to both the complaint and the third party complaint were filed in due course.
Now American, Hanley, and Herschel have all moved for summary judgment. The parties having conceded at oral argument that there is no genuine dispute as to any of the material facts set forth above, this case is an appropriate one for partial summary disposition.
American contends that it bought the semi-trailer from Hanley, who impliedly, but falsely, warranted and represented good title. Hanley denies that it sold the semi-trailer to American and that it warranted good title. Rather, says Hanley, Herschel sold the semi-trailer directly to American and warranted good title to both American and Hanley. Herschel asserts not only that it never warranted good title, but also that in fact good title was conveyed and the seizure of the semi-trailer improper. Moreover, Herschel argues that rescission is an inappropriate remedy here, where American *328 cannot tender the semi-trailer itself, but merely the police receipt.
A "sale" is defined by the Uniform Commercial Code as "the passing of title from the seller to the buyer for a price." N.J.S. 12A:2-106(1). "`Seller' means a person who sells or contracts to sell goods." N.J.S. 12A:2-103(d). Black's Law Dictionary says a "sale" is "a contract between two parties called, respectively, the `seller' (or vendor) and the `buyer,' (or purchaser), by which the former, in consideration of the payment or promise of payment of a certain price in money, transfers to the latter the title and the possession of property." These are simply formalized statements of principles known to every layman: A sale is a transfer of goods for consideration, and the seller is generally the party that receives the consideration and effects the transfer.
In this case, if it be assumed that there was any title or participating interest in the allegedly stolen semi-trailer which could be the subject of a sale, there is no question but that there was a sale to American. I think it equally clear that Hanley, not Herschel, was the seller. Hanley was the equitable owner of the vehicle by virtue of its contract with Herschel; moreover, it held the instrument of legal title which, endorsed in blank by Herschel, enabled it to put the registration of title in its own name at will. It was Hanley that arranged the sale to American, received the purchase price, conveyed title and a bill of sale (which expressly acknowledged its status as seller), and effected delivery.
Herschel, on the other hand, had no part in the transaction by which American acquired the semi-trailer. Rather, Herschel was the seller to Hanley in the earlier  and separate  sale by which Hanley had acquired the semi-trailer for itself at a cost of $2,500. For an analogous case, see Pope v. Ferguson, 82 N.J.L. 566 (E. & A. 1912). There plaintiff had contracted, first, to buy certain iron plates from defendant and, second, to sell them to B. Nicoll & *329 Co. for a profit. Plaintiff had also arranged for all deliveries to be made by defendant directly to B. Nicoll & Co., and this had been done for a while until defendant breached its contract. Plaintiff then brought an action for damages. Defendant unsuccessfully sought from the trial court a nonsuit or a directed verdict on the ground that.
* * * there had been an absolute assignment by the plaintiff of his contract with the defendant to B. Nicoll & Co., and that consequently any right of action which had resulted from the breach of the contract by the defendant was in B. Nicoll & Co., and not in the plaintiff. [82 N.J.L. at 569]
Although reversing on other grounds, the Court of Appeals specifically agreed with the lower court's rejection of defendant's claim of an assignment:
The agreement between the plaintiff and B. Nicoll & Co., which has already been recited, did not constitute an assignment of the defendant's contract with the plaintiff, but was a resale to B. Nicoll & Co. of the plates purchased by the plaintiff from the defendant [82 N.J.L. at 569]
Hanley's assertions of caveat emptor notwithstanding, there can be no doubt that Hanley impliedly warranted good title when it sold the semi-trailer to American. By the same token, Hanley had received from Herschel an implied warranty of good title with its acquisition of the vehicle. The Uniform Commercial Code provides that in every contract of sale there is implied a warranty of good title unless such warranty is specifically excluded by the language or circumstances of the agreement:
(1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that
(a) the title conveyed shall be good, and its transfer rightful;
and
(b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.
(2) A warranty under subsection (1) will be excluded or modified only by specific language or by circumstances which give the *330 buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have. [N.J.S. 12A:2-312]
The same principle has long been recognized under the common law. Stein v. Scarpa, 96 N.J.L. 86 (Sup. Ct. 1921); Gould v. Bourgeois, 51 N.J.L. 361 (Sup. Ct. 1889).
The facts of this case demonstrate no specific exclusions, and the general rule implying warranties of good title applies.
Herschel argues that good title was in fact conveyed to Hanley, and then to American. This appears doubtful in light of the certification filed by Thomas Cornelissen, a detective with the New Jersey State Police. Cornelissen states that when he examined the semi-trailer, its serial plate had been removed and the die-stamped frame serial number had been ground off. Moreover, the title certificate was invalid, since the serial number it listed was a number used for trailers manufactured in years prior to 1965 and could not have been the proper number for this 1965 vehicle.
Herschel's claim that good title was conveyed would, if sustainable, not only negate any breach of warranty, but also indicate that return of the vehicle could probably have been secured by American within the time (90 days after seizure) allowed by N.J.S.A. 39:5-47.
Other arguments might also have been made within the 90-day period to contest the validity of the seizure by the State Police. Challenge might have been made as to the constitutionality of the statute, a startling and confiscatory provision which ignores the bona fide purchaser for value whom the law is so careful to protect in other situations. But Cf. Kutner Buick, Inc. v. Strelecki, 111 N.J. Super. 89 (Ch. Div. 1970). Or it might have been argued that a semi-trailer is not a "motor vehicle" within the language and intendment of the statute.
However, I find it unnecessary to rule on these various questions. I think the relevant one is not whether the semi-trailer was properly taken and retained by the State Police, *331 but on whom the burden of contesting the police action should have rested.
The purchaser of goods warranted as to title has a right to rely on the fact that he will not be required, at some later time, to enter into a contest over the validity of his ownership. The mere casting of a substantial shadow over his title, regardless of the ultimate outcome, is sufficient to violate a warranty of good title. The policy advanced here has found expression in the past in cases where courts of equity have refused to order specific performance of contracts for the sale of land. See, e.g., Tillotson v. Gesner, 33 N.J. Eq. 313 (E. & A. 1880); Dobbs v. Norcross, 24 N.J. Eq. 327 (Ch. 1874). Justice Scudder said in Tillotson:
The true rule is stated in 3 Pars. on Con. (6th ed.)[*] 380, that if the character of the title be doubtful, although the court were able to come to the conclusion that, on the whole, a title could be made that would not probably be overthrown, this would not be good title enough; for the court [sic] have no right to say that their conclusion, or their opinion, would bind the whole world, and prevent an assault on the title. The purchaser should have a title which shall enable him not only to hold his land, but to hold it in peace; and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value. (33 N.J. Eq. at 326-327)
In Dobbs, the Chancellor wrote:
Every purchaser of land has a right to demand a title which shall put him in all reasonable security, and which shall protect him from anxiety, lest annoying, if not successful suits be brought against him, and probably take from him or his representatives, land upon which money was invested. He should have a title which shall enable him not only to hold his land, but to hold it in peace; and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value (24 N.J. Eq. at 331)
The quoted language was used about real estate and specific performance, but I think it offers a fair description of the protection a buyer obtains for himself when he purchases goods with a warranty of good title. That a buyer who gives notice to his seller may be protected even when he *332 surrenders the chattel without much struggle against a weak adverse claim is suggested in Williston On Sales, Rev. ed. (1948), Vol. 1, § 221, p. 569 where the text reads:
The burden is, of course, upon the buyer to establish that the seller had no title to the goods, and if the goods have been surrendered unreasonably by the buyer to an adverse claimant, this is no proof of the original seller's defect of title in an action between him and the buyer, unless the seller was requested to defend the action against the adverse claimant or at least had notice of that action. [emphasis added]
The New Jersey Study Comment to N.J.S. 12A:2-312 quotes the following language from Hawkland, Sales and Bulk Sales Under the Uniform Commercial Code, 40 (1958):
Section 2-312 does not mention the warranty of quiet possession, but it seems certain that the section contemplates that disturbance of quiet possession is one way in which a breach of warranty of title may be established.
This interpretation renders the current statute consistent with N.J.S.A. 46:30-19 of the now-repealed Uniform Sale of Goods Law. That statute provided in part:

46:30-19. Implied warranties of title

In a contract to sell or a sale, unless a contrary intention appears, there is: * * *.
(2) An implied warranty that the buyer shall have and enjoy quiet possession of the goods as against any lawful claims existing at the time of the sale.
Quiet possession is not enjoyed by a buyer whose purchase has been seized by the State Police as a stolen vehicle.
Breach of a warranty of good title results in a failure of consideration and generally gives the purchaser the right to rescind the transaction. Stein v. Scarpa, supra, is a case very close to the one at hand. There the plaintiff sought to rescind his purchase of a car on the ground that defendant had conveyed defective title. The car's original serial number had been obliterated and a new number substituted for it. In addition, the transfer of title to the plaintiff had not been *333 in compliance with statutory requirements. The Supreme Court upheld a lower court decision for plaintiff, saying:
The sale of goods in possession implied a warranty of title both at common law and under the Sales Act, and when the title failed the consideration failed with it, the bargain became nudum pactum and rescission then became the legal right of the vendee. 96 N.J.L. at 88.
In Stein v. Scarpa, as here, the parties before the court were all innocent of any illegality in their transaction. The opinion does not indicate how long plaintiff there had possession of the car prior to discovery of the defect in title and prior to plaintiff's first demand for rescission, but is clear that plaintiff returned actual possession of the car to defendant when he made his demand for return of the purchase price.
American elected to rescind almost immediately after receiving notice of the defective title, although that was not until 16 months after acquisition of the semi-trailer from Hanley. While delay in the rescission of a contract is evidence of an election to treat the contract as valid  Jones v. Gabrielan, 52 N.J. Super. 563, 576 (App. Div. 1958) and cases cited  the duty to rescind does not first arise until discovery of the grounds for rescission. City of Reading v. Rae, 106 F.2d 458, 462-63 (3rd Cir.1939), cert. den. 308 U.S. 607, 60 S.Ct. 145, 84 L.Ed. 508 (1939); Passaic Valley Sewerage Commissioners v. Holbrook, Cabot & Rollins Corp., 6 F.2d 721, 724-725 (3rd Cir.1925), cert. den. 269 U.S. 582, 46 S.Ct. 107, 70 L.Ed. 423 (1925); Conlan v. Roemer, 52 N.J.L. 53, 58-59 (Sup. Ct. 1889); Dennis v. Jones, 44 N.J. Eq. 513, 516 (E. & A. 1888). American's election to rescind was promptly made after discovery of the ground for rescission. Moreover, it was well within the time allowed by N.J.S.A. 39:5-47 for an assertion of ownership to the seized vehicle, so that Hanley could not have been prejudiced by any delay had it accepted rescission.
*334 American, of course, did not and could not tender return of the semi-trailer to Hanley, as the vehicle was in the hands of the police. Was American's tender of the receipt given by the police adequate to justify rescission? The law is clear that a rescission contemplates a return to status quo ante. Medivox Productions, Inc. v. Hoffmann-LaRoche, Inc., 107 N.J. Super. 47, 75-76 (Law Div. 1969); Ray v. Beneficial Finance Co., 92 N.J. Super. 519, 539 (Ch. 1966); MacFadden v. MacFadden, 49 N.J. Super. 356, 363 (App. Div. 1958); Panco v. Rogers, 19 N.J. Super. 12, 18 (Ch. 1952). But this is not an absolute requirement. Doughten v. Camden Building and Loan Association, 41 N.J. Eq. 556, 561 (E. & A. 1886); Byard v. Holmes, 33 N.J.L. 119, 127 (Sup. Ct. 1868). In Doughten, Justice Scudder said:
It is a well-settled principle of law and equity that a party cannot rescind a contract by his own will, and at the same time keep possession of the consideration, in whole or in part, which he has received under it. So far as it is practicable, he must put the other party in statu quo before he can exercise his right of rescission. The rule is that there shall be "prompt repudiation and restoration, as far as possible." (emphasis added) (41 N.J. Eq. at 561)
I am satisfied, under the circumstances, that American's inability to return the semi-trailer should not operate as a bar to rescission. Hanley never had perfect title. Possession of the vehicle, whether by Herschel or by Hanley or by American, was always subject to the possibility of seizure by the police. Once the vehicle was seized in fact, and for 90 days thereafter, the police receipt represented title equivalent in quality to that originally conveyed from Hanley to American. With the timely notice given by American, Hanley could have sought to establish the validity of its ownership and to secure repossession of the vehicle. That Hanley did not do so cannot weigh against American in its suit for rescission.
One other aspect of American's claim of rescission must be considered. For 16 months prior to the seizure of the semi-trailer, American had full possession and use of the *335 vehicle, while Hanley did not. During this period the semi-trailer presumably depreciated somewhat in value, though I recall that the parties agreed at oral argument that depreciation of this kind of an asset would not be especially significant in 16 months. At any rate, it can fairly be said that some value was gained by American and lost by Hanley between the time of the sale and the time that the vehicle was impounded by the police. This value, whatever it may be, must be returned to Hanley by American if there is to be a rescission.
After part performance a party is not entitled to rescind without returning or tendering the consideration or benefits received. Medivox Productions, Inc. v. Hoffmann-LaRoche, Inc., supra, 107 N.J. Super. at 76.
An amount representing reasonable value of the possessory interest American got and enjoyed between the date of sale and the date of police seizure will have to be credited against the $2,800.00, the price paid for a full and valid title. At oral argument I was informed by counsel that if basic rights and liabilities were determined, they would probably be able to agree upon this amount; if not, there will have to be a hearing so that an appropriate figure can be fixed. After the credit is agreed upon or determined, and is deducted from the $2,800.00 price, then Hanley will have to pay American the difference together with interest at 6% on that difference from the date of Hanley's sale to American.
As a part of the transaction of rescission American should deliver to Hanley the police receipt and whatever purported certificate or certificates of title American may hold.
It also follows from what has been said that Hanley is not entitled to rescission of the contract by which it purchased the semi-trailer from Herschel. Unlike American, Hanley did not give timely notice of rescission of its contract of purchase, and so Hanley must be held to have elected to treat the contract as valid. Jones v. Gabrielan, supra. Having allowed the 90 days provided by N.J.S.A. *336 39:5-47 to expire without notification to Herschel, Hanley deprived Herschel of an opportunity to try to establish ownership and reacquire possession of the semi-trailer, so that Hanley could not thereafter restore Herschel to the status quo ante.
Hanley nonetheless has an action for damages, against Herschel, based on breach of contract. Much if not all of what has been said above concerning warranties of title applies to this aspect of the case. The amount of damages is not ascertainable at this juncture. Herschel may have a valid claim for a setoff, due to Hanley's failure to have mitigated damages by preserving Herschel's right to redeem the semi-trailer from the police. To evaluate this setoff necessarily requires evidence as to the likelihood that Herschel might or might not have succeeded in reclaiming the vehicle had it had the chance.
American's motion for summary judgment rescinding its contract with Hanley is granted upon the conditions specified above. Hanley's motion for summary judgment against American and Herschel is denied, except that summary judgment is granted adjudicating Herschel liable to Hanley in damages for breach of contract in an amount to be determined. Herschel's motion for summary judgment against Hanley is denied as to Hanley's claim for damages and granted as to rescission. The parties are to be allowed thirty days to work out their differences with regard to the two remaining issues in this case, namely (1) the value to American of 16 months' possession and use of the semi-trailer and (2) the amount of damages suffered by Hanley as a result of Herschel's breach of contract. If the issues remain unresolved at the end of the allotted time, then this case is to be set down for hearing at the request of any one of the parties.