# BILL WALLACE FORD, INC., et al v LAMOUREAUX
## Case No. MC-87-9882-RF
County Court, Palm Beach County
April 14, 1988

### APPEARANCES OF COUNSEL

**Gary Allan Isaccs,** Davis Critton Hoy & Diamond, for Plaintiff

**Fletcher N. Baldwin, III,** Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, for Defendant

### OPINION OF THE COURT

ROBERT M. GROSS, County Judge.

### *FINAL JUDGMENT*

This case came before the Court for non-jury trial on February 4, 1988. Both sides were present and well represented by counsel.

On September 11, 1986, Defendant purchased a 1986 Thunderbird from Bill Wallace Ford. As a trade in, she gave her 1983 Ford Mustang. For the Mustang, Bill Wallace Ford gave Plaintiff an $1,800.00 credit on the new car sale. A short while later, Bill Wallace Ford sold to Mustang to Coastal Auto Sales for $2,800.00.

The greater weight of the evidence supports the conclusion that the

Mustang was stolen. The vehicle identification number on the windshield plate of the Mustang matched the vehicle identification number on the car's Florida title. However, these VIN numbers did not match the confidential VIN number of the car. Based on his observation of the car and on information he obtained from national clearing houses, Detective Larry Austin opined that the car was stolen. This opinion was admitted into evidence over Plaintiff's objection. There was no evidence presented concerning the specifics of the theft, such as the method by which it was accomplished or the identity of the true owner of the car. Detective Austin impounded the car and Coastal Auto Sales stopped payment on the check to Bill Wallace Ford.

Defendant purchased the Mustang on June 4, 1984 from Kensington Motors, located in Michigan. At the time of the sale, Kensington Motors represented to her that the title was free and clear of all encumbrances. She received a Michigan title for the car which she later used to apply for a Florida title. At no time did Defendant have any reason to believe that there was any problem with the title.

Although there was evidence that the car was "stolen," there was no evidence as to the specific manner of theft. Plaintiffs did not exclude the possibility, for example, that the theft was the result of a "delivery . . . procured through fraud punishable as larcenous under the criminal law." § 672.403(1)(d), Fla. Stat. (1987). If such were the case, Defendant would have had the power to transfer good title to Bill Wallace Ford, a good faith purchaser for value. *Id.; Carlsen v Rivera,* 382 So.2d 825 (Fla. 4th DCA 1980); *Anderson Contracting Company v Zurich Insurance Company,* 448 So.2d 37,38 (Fla. 1st DCA 1984); *Brown & Root, Inc v Ring Power Corporation,* 450 So.2d 1245, 1246-47 (Fla. 5th DCA 1984).

Under the facts of this case, it is unnecessary for the Court to base its decision on the manner of theft or to determine who has the burden of proof on that issue. The matter for determination is whether Defendant breached an express or implied warranty that she was conveying good title to the Mustang. § 672.312, Fla. Stat. (1987). Comment 1 to § 672.312 suggests that a warranty of title protects a buyer even against claims which ultimately might be defeated.

Subsection (1) makes provision for a buyer's basic needs in respect to a title which he in good faith expects to acquire by his purchase, namely, that he receive a good, clean title transferred to him also in a rightful manner *so that he will not be exposed to a lawsuit in order to protect it.* § 672.2-213, F.S.A., U.C.C. Comment 1 (1966) (Emphasis supplied).

48

In the case of *American Container Corp. v Hanley Trucking Corp.,* 268 A.2d 313 (N.J. Sup. Ct. 1970) the seller sold the buyer a truck which was later seized by the state police. Defending against a suit for breach of warranty of title, the seller argued that good title was in fact conveyed and that the police seizure was improper. The court found it unnecessary to reach these issues, focusing rather "on whom the burden of contesting the police action should have rested."

> The purchaser of goods warranted as to title has a right to rely on the fact that he will not be required, at some later time, to enter into a contest over the validity of his ownership. The mere casting of a substantial shadow over his title, regardless of the ultimate outcome, is sufficient to violate a warranty of good title. 268 A.2d at 318

In this case, the deficiencies of title were not insubstantial. Notice to Defendant of the title problem and of the seizure of the car was adequate. Plaintiff has demonstrated by the greater weight of the evidence that Defendant breached a warranty that the title she was conveying was good.

The damages for breach of warranty clearly include the $1,800.00 credited by Bill Wallace Ford as part of the purchase of the new car. § 672.714(2), Fla. Stat. (1987); *Lawson v Turner,* 404 So.2d 424, 425 (Fla. 1st DCA 1981). In addition, Plaintiffs are entitled to recover consequential damages. § 672.714(3), Fla. Stat. (1987); *Bill Branch Chevrolet v Redmond,* 378 So.2d 319, 320 (Fla. 2d DCA 1980). Consequential damages resulting from a seller's breach include any loss "resulting from general or particular requirements and needs of which the seller . . . had reason to know . . ." § 672.715(2)(a) Fla. Stat. (1987). Comment 6 to § 672.715 provides as follows:

> In the case of sale of wares to one in he business of reselling them, resale is one of the requirements of which the seller has reason to know within the meaning of subsection (2)(a). § 672.2-715, F.S.A., Comment 6 (1966).

Plaintiff is entitled to recover its $1,000.00 lost profit on the sale to Coastal Auto Sales, a foreseeable item of damage under the Uniform Commercial Code. According, it is

ORDERED AND ADJUDGED that Plaintiffs, BILL WALLACE FORD, INC., and UNIVERSAL UNDERWRITERS INSURANCE COMPANY recovers from Defendant, JANICE LAMOUREAUX, $2,800.00 in principal with $50.00 in court costs, for which let execution issue, with interest at 12% per annum. The Court reserves jurisdiction to assess prejudgment interest and additional taxable costs, if any.

DONE AND ORDERED in West Palm Beach, Florida this 14th day of April, 1988.