233 N.J. Super. 347 (1989)
559 A.2d 3
YTTRO CORPORATION, A FLORIDA CORPORATION, PLAINTIFF-APPELLANT,
v.
X-RAY MARKETING ASSOCIATION, INC., A NEW YORK CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 5, 1989.
Decided May 30, 1989.
*348 Before Judges BRODY, ASHBEY and SKILLMAN.
James A. Sylvester argued the cause for appellant (Edwards and Antholis attorneys; James A. Sylvester, on the brief).
Helen E. Hoens argued the cause for respondent (Lum, Hoens, Conant & Danzis attorneys; Helen E. Hoens, of counsel and on the brief).
The opinion of the court was delivered by ASHBEY, J.A.D.
*349 This appeal involves the interpretation of the Uniform Commercial Code (UCC) provisions concerning the seller's warranty against patent infringement. Plaintiff seller Yttro Corporation (Yttro) brought suit for breach of contract by defendant buyer X-Ray Marketing Association, Inc. (XMA). XMA defended, claiming Yttro violated the warranty against patent infringement provided for in the UCC. The court granted XMA summary judgment. Yttro appeals and we reverse and remand for trial.
The July 2, 1985 contract between the parties provided for Yttro to sell exclusively to XMA "Yttro[tm] filters."[1] XMA would distribute and market the filters through distributorships established by Yttro. Under the contract XMA was obligated to purchase each year for three years, beginning July 2, 1985, a minimum of 600 filters at a price of $135 per filter, or a minimum of 1,000 filters at a price of $125 per filter.
During the first year XMA elected to purchase 1,000 filters but refused to accept delivery of 738 of them. Apparently XMA took no further delivery at any time and whether delivery was tendered is not in the record on appeal. Yttro ultimately brought suit for its contract purchase price and XMA defended on grounds unrelated to patent infringement, the issue in this appeal.
On February 2, 1987, after Yttro commenced this suit, Jerry Hoyt, President of XMA wrote Gilbert Zweig, Vice President of Yttro Corporation: "[o]n behalf of X-Ray Marketing Associates, Inc., I am writing to you to formally repudiate the contract between X-Ray Marketing Associates, Inc. and Yttro Corporation which was signed by us on or about July 2, 1985.... We hereby tender back to you all remaining filters in *350 our possession." This repudiation was based on the filters' performance, its compatibility with conventional X-ray equipment and the "master" distributorships Yttro had represented it had established.
While the litigation was in progress, on or about September 4, 1987, Yttro received a letter from the University of Virginia Alumni Patents Foundation (Foundation) demanding that Yttro cease selling these yttrium filters in violation of the Foundation's patent.[2] Yttro responded that the Yttro filter was not covered by the Foundation's patent but sought to obtain a license.[3]
On January 26, 1988, XMA wrote Yttro:
It has recently come to my client's attention that Yttro Corporation is not and never was the patent holder for the yttrium filter. Moreover, my client has informed me that the patent holder has never granted a license to Yttro Corporation to sell the yttrium filter. Therefore, this letter will serve as notice to you that my client is rescinding its contract with Yttro Corporation based on Yttro Corporation's defective title with respect to the filters. This letter is not meant to obviate the [Hoyt to Zweig letter of February 2, 1987].
On March 17, 1988, Yttro and the Foundation entered into a licensing agreement which provided that Yttro would have the non-exclusive license to make and to sell the patented filters retroactively to February 12, 1985, the date of the issuance of the patent.
When the motion judge granted summary judgment in favor of XMA, he found that the contract between Yttro and XMA was void because Yttro did not have a valid patent, that Yttro had no right to cure this defect by a subsequent licensing agreement, and that if there was such a right Yttro had not cured its contract defect within a reasonable time.
*351 Section 2-312 of the UCC, as adopted in New Jersey,[4] provides in relevant part as follows:
(1) ... there is in a contract for sale a warranty by the seller that
(a) the title conveyed shall be good, and its transfer rightful; and
* * * * * * * *
(3) Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement....[5] [N.J.S.A. 12A:2-312].
The New Jersey Study Comment to this section states:
Subsection 2-312(3) makes a significant addition to the title warranties listed in U.S.A. sec. 13 (N.J.S.A. 46:30-19) [repealed]. It extends the statutory warranty of title to include claims by any third party by way of infringement. The subsection imposes a duty on the seller to make certain that no claim of infringement or patent will cloud or mar the buyer's title....
By failure to support its factual claim that the Yttro filters did not breach the Foundation patent in response to the summary judgment motion, Yttro conceded a breach of § 2-312(3).[6] There are no New Jersey cases and the very few out-of-state cases interpreting the consequences of such a breach. American Container Corp. v. Hanley Trucking Corp., 111 N.J. Super. 322 (Ch. Div. 1970), cited by the trial judge, interpreted § 2-312(1). There rescission was granted the buyer of a stolen truck for a breach of title warranty. The Court said,
The purchaser of goods warranted as to title has a right to rely on the fact that he will not be required, at some later time, to enter into a contest over the validity of his ownership. The mere casting of a substantial shadow over his title, regardless of the ultimate outcome, is sufficient to violate a warranty of good title. The policy advanced here has found expression in the past in cases where courts of equity have refused to order specific performance of contracts for the sale of land. [Citations omitted].
* * * * * * * *

*352 Breach of a warranty of good title results in a failure of consideration and generally gives the purchaser the right to rescind the transaction. [Id. at 331-332].
In American Container, however, the goods were stolen and no cure was at issue. See also Stein v. Scarpa, 96 N.J.L. 86, 88 (Sup.Ct. 1921) (pre-UCC); for a discussion of American Container Corp. v. Hanley Trucking Corp., see White and Summers, Uniform Commercial Code (3 ed. 1988), § 9-12 at 488-489.
We are first satisfied that Yttro may not assert that its breach did not occur until the patent infringement notice to the buyer. See Stehr v. Sawyer, 40 N.J. 352, 357 (1963). Section 2-312(3) provides specifically that the warranty against infringement attaches at the time of delivery. Section 2-725(2) also provides:
A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered. [N.J.S.A. 12A:2-725(2) (emphasis added)].
See also Dreier Co., Inc. v. Unitronix Corp., 218 N.J. Super. 260, 269 (App.Div. 1986); Biocraft Laboratories, Inc. v. USM Corporation, 163 N.J. Super. 570, 572 (App.Div. 1978). Yttro's breach of warranty occurred when its product delivery was required by the contract. Only XMA's obligation to reject the goods was delayed until XMA's discovery of its infringement grounds. American Container, 111 N.J. Super. at 333.
Yttro's assertion that the warranty against infringement can only be breached where a direct claim of infringement is asserted against the buyer is similarly meritless. As the court in American Container said, "[t]he mere casting of a substantial shadow over his title, regardless of the ultimate outcome, is sufficient to violate a warranty of good title." 111 N.J. Super. at 331. The Uniform Commercial Code Comment states:
This section [2-312] rejects the cases which recognize the principle that infringements violate the warranty of title but deny the buyer a remedy unless he has been expressly prevented from using the goods. Under this Article *353 "eviction" is not a necessary condition to the buyer's remedy since the buyer's remedy arises immediately upon receipt of notice of infringement; it is merely one way of establishing the fact of breach.
In White and Summers, supra, the authors said of § 2-312(3):
Although this section has yet to be litigated, there are two issues that deserve notice.... A second question is related to the quiet possession problem involved with the warranty of title. Is the warranty against infringement breached when the buyer incurs litigation expenses in successfully defending against an infringement claim? One commentator has opined: "A rightful claim is one where the buyer or seller reasonably believes that a third party's infringement charge would probably be upheld by the courts." In any event, both of these problems will have to be worked out by the courts, which have hardly been inundated with 2-312(3) cases. [White and Summers, supra, § 9-12 at 490, quoting Dudline, "Warranties Against Infringement under the Uniform Commercial Code," 36 N.Y.S.B.F. 214, 219 (1964)].
Yttro's main assertion on appeal however is that if it breached the warranty against infringement, it was entitled to cure that defect retroactively.
The trial judge held:
Therefore, we are brought to the issue of whether or not the plaintiff had the right to quote, "cure," end quote, its defect in title.... To now say we can cure that two and a half years into the contract, three years into the contract and then sue you for damages for the period of time prior to it seems unreasonable. The defendant did not have the obligation to have receipt of a warranty guarantee or right of or assurance from the plaintiff. There's nothing in the contract that would require them to now depend upon the final wording of the claimant to reimburse them for any damages that would have occurred had they marketed the product.... As I've said, the right to, quote, "cure this" did not exist once the contract was declared void and under the circumstances of this case even if there was such a right to cure it was not one that could be exercised reasonably under the circumstances since two and a half years had gone by before any cure was obtained. I think it's two and a half years, three-year contract. For those reasons the Motion for Summary Judgment will be granted.
In Ramirez v. Autosport, 88 N.J. 277 (1982), the Supreme Court extensively analyzed a buyer's and seller's rights under the UCC respecting delivery of non-conforming goods.[7] The Court there held that the UCC's remedies replaced "rescission," and that a buyer may reject non-conforming goods or revoke its acceptance of non-conforming goods without necessarily having *354 a right to cancel the contract. Id. at 285-286, 288. Before acceptance a buyer may reject goods for non-conformity (N.J.S.A. 12A:2-601). If the rejection occurs within the time set for delivery, the seller's right to cure is unconditional until that time occurs (N.J.S.A. 12A:2-508(1)). If rejection occurs after the time set for delivery, the seller has a further reasonable time to cure if the seller reasonably believes that the goods would be acceptable with or without a money allowance (N.J.S.A. 12A:2-508(2)). After acceptance the buyer may revoke its acceptance only if the non-conformity substantially impairs the value of the goods. (N.J.S.A. 12A:2-608).[8]Id. at 285-286;
The motion judge did not apply the Ramirez analysis. For the first year of the contract XMA accepted delivery of 262 filters, refused 738, and in effect repudiated the contract before the time set for delivery of the remainder. As to those filters XMA accepted, there was no finding that the infringement defect (which was never asserted) substantially impaired the value of the goods. Moreover, even if found to be a substantial defect, Yttro was arguably still entitled to a reasonable time in which to cure. The court's finding was that Yttro was not entitled to cure the title defect respecting all of the filters regardless of time for delivery and that if it was so entitled, the cure attempted was unreasonable, but there was no differential analysis based on Ramirez or the UCC.[9]
Professor Hawkland describes the seller's right to cure a title defect as follows:

*355 A nonconforming delivery is curable if it does not subject the aggrieved party to any great inconvenience, risk or loss....
Under this test, it is necessary to distinguish between cases in which the goods have been accepted before the title defect is discovered and those in which the goods are rejected initially because of such a defect.
........
If the buyer takes possession before either party knows of the title defect, he is a converter and not even a prompt surrender of the goods, upon learning of the outstanding claim of ownership, will purge him of this tort. Whether or not cure should be permitted in this circumstance, therefore, does not turn on whether the buyer is exposed to the risk of an action for a conversion. It should depend on his possible inconvenience and loss.
Suppose a buyer purchases a car from a seller for $6,000 and drives it a year before discovering that it is a stolen vehicle, still owned by O. Suppose, additionally, that the car has depreciated in value to $4,000 and that O will sell his interest in it for $5,000. Can the seller cure this defective title by negotiating this settlement with O if the buyer objects and insists on revoking his acceptance on the basis of breach of warranty of title? The answer should be in the affirmative. If the seller clears the title, the buyer will suffer no loss, no risk and no inconvenience. [Hawkland, supra, § 2-312:07 at 281-282 (footnote omitted)].
XMA urges that it had a right to rescind the entire contract, including its obligation to accept filters for which no delivery was called for prior to cure, because the contract was illegal and therefore void from its inception. See Vasquez v. Glassboro Service Ass'n., Inc., 83 N.J. 86, 98-99 (1980); Marx v. Jaffe, 92 N.J. Super. 143 (App.Div. 1966)
We reject this reasoning. While there is no question that the first Yttro filter delivery violated the federal patent statutes, see 35 U.S.C.A. § 271(a) ("whoever without authority makes, uses or sells any patent invention, within the United States during the term of the patent, therefore, infringes the patent"), plaintiff did not violate any criminal provisions of the patent laws, see 35 U.S.C.A. § 292 (false markings). The statute provides only civil remedies against a patent infringer, see 35 U.S.C.A. § 281. XMA's reliance on cases respecting breaches of contract by violating a statute with criminal penalties is misplaced. See Marx v. Jaffe, 92 N.J. Super. at 146; Naseef v. Cord, Inc., 90 N.J. Super. 135, 139 (App.Div. 1966), aff'd 48 N.J. 317 (1966). While even absent criminal penalties contracts which violate public policy have been declared void and certain *356 contracts which violate a statutory scheme have been declared void as against public policy, see Design-4 v. Masen Mountainside Inn, Inc., 148 N.J. Super. 290, 293 (App.Div. 1977), certif. den. 75 N.J. 6 (1977); McCarthy v. National Assoc. for Stock Car Auto Rac., etc., 90 N.J. Super. 574, 577 (App.Div. 1966), aff'd 48 N.J. 539 (1967), the motion judge did not rely on this authority and we do not regard it as applicable.
We conclude that the contract was not void at inception based upon the patent infringement and that the summary judgment in XMA's favor must be reversed. Yttro was entitled to a hearing to resolve issues of fact under a Ramirez analysis. Respecting goods actually delivered in violation of the warranty against infringement, the reasonableness of Yttro's cure must be judged in the light of the absence of loss, risk or inconvenience to XMA.[10]
Reversed and remanded for hearing.
NOTES
[1] Yttro manufactured "filters" which, when used with conventional X-ray cameras, reduced a patient's exposure to radiation when X-ray pictures were taken. The filters are made out of yttrium, a rare earth element.
[2] According to this letter, Dr. Yen Wang, owner of a license on the "Hartwell Fluorscopic Filter," had also sent a letter to Yttro in September of 1984 demanding that it stop marketing the yttrium filter.
[3] Zweig stated that the Foundation's patent was for filters 100 to 250 microns thick and that Yttro used filters under 100 microns thick.
[4] We herewith refer to the relevant sections of the UCC and corresponding New Jersey statutory references interchangeably.
[5] Yttro does not assert that it is not a "merchant regularly dealing in" yttrium filters.
[6] At oral argument before us, Yttro emphasized that this concession was for purposes of the motion and appeal.
[7] It appears conceded that goods with "title" defects are "non-conforming." See Hawkland, UCC Series (1982), § 2-312:07 at 280; N.J.S.A. 12A:2-106(2).
[8] The Ramirez Court left open the question of whether a seller has a right to cure substantial defects that would otherwise justify revocation of acceptance. 88 N.J. at 286.
[9] Yttro's reliance on Paradiso v. Mazejy, 3 N.J. 110 (1949), and Johnson v. Rivara, 11 N.J. Misc. 677 (Sup.Ct. 1933), aff'd 112 N.J.L. 92 (E. & A. 1934), is misplaced, however. Both cases stand for the proposition that in a sale of real estate, where time is not of the essence, the seller should be allowed a reasonable time before closing to perfect his title. Such cases are not governed by the UCC. They are, however, analogous, respecting the right to cure a breach of warranty prior to the time of delivery.
[10] XMA never contended on the motion or on appeal that the contract should be rescinded due to fraud on the part of Yttro respecting the patent or because Yttro, knowing of its warranty violation, contracted to sell the filters to XMA without obtaining a licensing agreement from the patent holder. See Rego Industries, Inc. v. American Modern Metals Corp., 91 N.J. Super. 447, 456 (App.Div. 1966); Roberts v. James, 83 N.J.L. 492, 494 (E. & A. 1912). Such proof would also be relevant respecting the reasonableness of Yttro's cure. We recognize that XMA raised many other defenses which were not considered.