**KANSAS CITY POWER AND LIGHT COMPANY, Appellant,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, Appellee.**

No. 82–1378.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1982.

Decided June 3, 1983.

Rehearing Denied July 5, 1983.

William H. Sanders, Kansas City, Mo., William L. Slover, C. Michael Loftus, Donald G. Avery, Kelvin J. Dowd, Washington, D.C., for Kansas City Power and Light Co.; A. Drue Jennings, Gen. Counsel, Kansas City Power and Light Co., Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., Slover & Loftus, Washington, D.C., of counsel.

Betty Jo Christian, James H. Pipkin, Jr., Charles G. Cole, Steptoe & Johnson Chartered, Washington, D.C., Thomas E. Deacy, Jr., Edward W. Mullen, Patrick C. Cena, Deacy & Deacy, Kansas City, Mo., for appellee Burlington Northern R. Co.; Donald E. Engle, Nicholas P. Moros, Burlington Northern R. Co., St. Paul, Minn., of counsel.

Before ROSS and FAGG, Circuit Judges, and WATERS,* District Judge.

ROSS, Circuit Judge.

This action was filed by Kansas City Power and Light (KCPL) against Burlington Northern Railroad (BN) to enjoin BN from collecting the tariff rate which BN filed with the Interstate Commerce Commission (ICC) for shipment of coal to Iatan, Missouri (also known as Sadler, Missouri). KCPL asserted that the shipment was governed by a contract rate and that the proposed tariff was contrary to the provisions of that contract. BN argued that no such contract existed and that it is entitled to collect the rate established by the tariff filed with the ICC.

The district court[1] on December 31, 1981, issued a temporary restraining order to prevent BN from charging a rate in excess of that in effect at the time this action was filed. After trial the district court concluded that although a contract existed between KCPL and BN the contract was unenforceable for failure to comply with the Missouri Statute of Frauds. Thus, BN was entitled to collect the tariff rate. KCPL appealed the district court's judgment in favor of BN. *Kansas City Power, Etc. v. Burlington No. R. Co.,* 534 F.Supp. 1318 (E.D.Mo.1982).

■ After a careful review of the testimony in this case and the documents in evidence we conclude that there was more than an informal agreement between the parties and that in fact the series of letters between the parties did constitute a contract. However, the contract does not comply with the statute of frauds because it fails to set out the duration of the agreement. Thus, the contract is voidable[2] and the district court's judgment is affirmed.

■ This court is bound by the rule that the factual findings of the trial court regarding the existence of a contract are reviewed under the clearly erroneous standard. *Blair Intern. Ltd. v. LaBarge, Inc.,* 675 F.2d 954, 957 and 958 (8th Cir.1982). Additionally, an appellate court should give great deference to the district court's determination of state law unless it is "fundamentally deficient in analysis or otherwise lacking in reasoned authority." *Ancom, Inc. v. E.R. Squibb & Sons, Inc.,* 658 F.2d 650, 654 (8th Cir.1981). A review of the documents in this case supports the district court's finding that:

> On May 29, 1980, or shortly thereafter, the parties entered into a contract for the shipment of coal from Belle Ayr, Wyoming, to Sadler, Missouri, which specified the rate for such shipments as well as the method by which the rate would be escalated in the future.

The essential facts are set out in the district court's opinion and are briefly summarized here. After months of negotiations between KCPL and BN to set a rate for shipment of coal to Sadler, Missouri, BN

---

* The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

1. The Honorable Joseph E. Stevens, Jr., United States District Court for the Western District of Missouri.

2. The contract is unenforceable because a contract which fails to comply with the statute of frauds is voidable "at the election of the party to be charged." *Community Land Corp. v. Stuenkel,* 436 S.W.2d 11, 18 (Mo.1968).

formally filed a freight rate of $9.34 with the ICC. KCPL informed BN that it would protest the rate proposal and countered with a proposed rate of $8.41 per ton. BN responded with a rate of $8.82 and withdrew its rate filing with the ICC. By August 1979, KCPL was ready to begin operations at the Iatan plant so the parties agreed to temporarily ship coal at a rate set out in a contract they had for shipment of coal to KCPL's Amsterdam, Missouri plant.

In a letter dated April 30, 1980, BN's assistant vice president, Richard Sandgren, proposed a rate of $8.41 to be increased at six month intervals at 100% of the Index of Material Prices and Wage Rates published by the Association of American Railroads. The letter stated: "This quotation should not be considered as contract and under no circumstances should it be considered a commitment to a rate level on which any contract can be consummated." An internal memorandum prepared by Sandgren dated May 30, 1980, set forth the parties' negotiations during a meeting the previous day. The parties tentatively agreed to a 90% escalation figure and a rate of $9.71. Additionally, the memorandum stated that "if we reached agreement on Iatan, McPhee [KCPL vice president] stated that there would be no litigation in the foreseeable future." On June 3, 1980, Sandgren wrote McPhee stating that "[t]his is confirmation of the rate proposal we offered May 29, 1980, in Kansas City for unit train coal service from Belle Ayr, Wyoming, to Sadler, Missouri." The June 3 letter further reiterated the agreed upon rates and escalation provisions. Finally, in a letter dated June 9, 1980, BN vice president Cobb stated: "I understand we are in agreement about the Iatan or Sadler rates. * * * I feel it was good for us to reach the compromise at Sadler, which lays to rest both the rates to Amsterdam and Sadler for the foreseeable future."

BN's statement early in negotiations that the quotation should not be considered as a contract is insufficient to insulate BN from liability on what otherwise would be a binding contract. Further, that statement was made in April of 1980 and was never re-peated in subsequent letters. The last letter written by Sandgren in fact indicated that the parties had reached an agreement acceptable to BN. For BN now to rely on its disclaimer in an earlier letter would allow BN to avoid the binding language included in its subsequent negotiation letters. Additionally, the parties have indicated an intent to be bound for some time in the future by their agreement to an escalation index. Given the wording of the letters exchanged by the parties, we are unwilling to reverse the district court's finding that a contract existed.

■ A reading of the record shows that the district court was also correct in holding that the contract violated the statute of frauds, Mo.Ann.Stat. § 432.010 (Vernon 1952), because the writings failed to sufficiently specify the duration of the contract. Since the term of the contract is an essential element, it must be set out in the contract in order for the contract to comply with the statute of frauds. *Young v. A–T–O, Inc.*, 484 F.Supp. 626, 628 (E.D.Mo.1980). The writings which comprise the contract in this case mention only "the foreseeable future" as a possible term of the contract. As the district court held, the phrase "foreseeable future" is "entirely too vague to provide a basis upon which to bind BN for an extended period of time." The parties had a contract for the shipment of coal to KCPL's Amsterdam plant which clearly specified a term of twenty years. Had the parties agreed to a comparable duration here they could easily have included the term in the correspondence. No such term was expressly agreed to. For these reasons and for those reasons set forth in the district court's memorandum, we affirm the district court's holding that the contract violated the statute of frauds.