STACO ENERGY PRODUCTS COMPANY fka Staco Incorporated Equico Lessors, Inc., Plaintiffs,

v.

DRIVER–HARRIS COMPANY, Defendant-Third Party Plaintiff,

v.

Karl Heinz RAMM, Third Party Defendant.

No. C–3–80–154.

United States District Court, S.D. Ohio, W.D.

Nov. 4, 1983.

---

Ray A. Cox, Dayton, Ohio, for plaintiffs.

Gordon H. Savage and Brian D. Weaver, Dayton, Ohio, for defendant-third party plaintiff.

## DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND SUSTAINING DEFENDANT–THIRD PARTY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; JUDGMENT TO BE ENTERED FOR DEFENDANT–THIRD PARTY PLAINTIFF; PLAINTIFF'S MOTION TO FILE AMENDED COMPLAINT SUSTAINED; FURTHER PROCEDURES SET

RICE, District Judge.

Plaintiffs Staco Energy Products Co. (Staco) and Equico Lessors, Inc., filed this action against Driver-Harris Company (DHC) in Montgomery County (Ohio) Common Pleas Court, for breach of contract and of express and implied warranties. DHC removed the case to this court as a diversity action, and later brought suit against Karl Heinz Ramm, a resident of West Berlin of the Federal Republic of Germany, as a Third Party Defendant.

Several motions are pending in this case. Plaintiffs and DHC have filed cross motions for summary judgment (Docs. # 34 & 24), principally on DHC's status as an "agent" of Ramm, and as a "seller" or "merchant" under the Uniform Commercial Code (UCC). Ramm has also filed a motion for summary judgment (Doc. # 18), arguing (1) that he has not been properly served with process pursuant to a treaty between the United States and Germany and (2) that, in any event, a forum selection clause in the contractual papers only permits suit against him in West German courts. Finally, Plaintiffs have moved to file an amended complaint (Doc. # 36), to add Ramm as a party Defendant. Ramm has moved to strike the latter motion (Doc. # 37), on the basis that (for the reasons set out above) he is not a proper party in this lawsuit.

The Court will consider these motions seriatim.

## I. *Disposition of Cross Motions for Summary Judgment*

Plaintiffs allege that DHC delivered, for compensation, two "Ramm-type" toroidal winding machines, which are designed to place copper on coils of steel. In other words, Plaintiffs contend that DHC "sold" the machines to them, and is liable for the alleged malfunction of those machines as a party to a contract, and as a "seller" or "merchant" under Ohio's enactment of the UCC.[1] DHC argues that it is not liable for the alleged malfunctions, since it was but an "agent" or "middleman" for Ramm in all of the relevant transactions, and is not a "seller" under the UCC. Since the relevant facts on those issues are not disputed, but *cf.* footnote 2, *infra*, disposition of the matters on cross motions for summary judgment is appropriate. *Stewart v. Dollar Federal Savings & Loan Assoc.,* 523 F.Supp. 218, 219 (S.D.Ohio 1981).

The relevant portions of the record consist primarily of the affidavits and depositions of Edwin Shuttleworth, a vice-presi-

---

1. While the parties do not expressly address the point, they assume that Ohio law governs both the breach of contract and the UCC claims involved in this case. This assumption appears to be correct, given that the contract or contracts at issue herein were made and largely performed in Ohio. *See, Neff Athletic Lettering Co. v. Walters,* 524 F.Supp. 268, 273 n. 3 (S.D.Ohio 1981) (discussing Ohio case law on choice-of-law in contract actions); *Price Bros. Co. v. Phila-delphia Gear Corp.,* 649 F.2d 416, 421 n. 1 (6th Cir.), *cert. denied,* 454 U.S. 1099, 102 S.Ct. 674, 70 L.Ed.2d 641 (1981) (discussing choice of Ohio law in UCC action, citing Ohio Rev.Code Ann. § 1301.05 [UCC § 1–105] ). As indicated in the text, *infra,* however, the choice of Ohio law matters little, since neither Ohio nor any other jurisdiction has copious precedent on the issues involved in this case.

dent of DHC, of Leroy Carver and of Henry Boppel, the president/general manager and group vice-president, respectively, of Staco, and copies of various contractual papers attached thereto. Those materials indicate the following facts. Staco initially learned of the Ramm machines while examining Ramm sales literature. The same literature indicated that potential buyers should contact DHC which, *inter alia,* had branch offices in West Germany and other countries in Europe. Staco management, in fact, orally agreed to utilize DHC as Ramm's "agent," and "middleman" and "representative" (their words) in order to obtain the machines, since DHC had previously dealt with Ramm through the European branch offices.

Staco received quotations from Ramm, and DHC arranged for Staco officers to visit Ramm in West Berlin, and they eventually ordered two winding machines. The purchase orders were placed with DHC, and Staco paid DHC (through Plaintiff Equico Lessors). DHC, in turn, purchased the machines from Ramm less 5%, which represented the commission. Apparently, this procedure, for several "paperwork" reasons, was actually easier than Staco attempting to order directly from Ramm in Germany. Acknowledgement of the purchase orders, with accompanying guarantees and warranties, went from Ramm to Staco. No office of DHC actually possessed the machines at any time, since they were shipped directly from Ramm to Staco.[2] This procedure was in contrast to DHC's handling of certain Ramm coiling machines for other customers, wherein DHC took possession of the machines for sale in the United States. DHC's markup on the latter sales was about 20%.

Staco immediately ran into problems in running the machines, and forwarded complaints to DHC which, in turn, sent word to Ramm. While Ramm sent an official to Staco's operations to examine the machines, the controversy was never resolved, since Ramm insisted that the machines were running properly. Both Ramm and DHC refused to take the machines back, and they currently are held, unused, in storage by Staco. This litigation followed.

As noted above, Plaintiffs insist that DHC was a party to a contract to buy and sell the Ramm machines in question, and hence should be liable for the failure of those machines to function properly. DHC argues that it was but an agent for a disclosed principal (Ramm), and should not be liable under either general agency law or the UCC.

■ The two sources of law referenced by DHC present similar analytic inquiries in this case. Under general agency law, an agent acts for the benefit of a principal at the latter's direction. No one factor in a transaction determines if an individual is an agent for another, as opposed to an independent buyer or seller; among the factors to consider are the transfer of title, liability for the goods, and the right to fix a price. W. Seavey, Agency §§ 2–3, 11 (1964); 3 O.Jur.3d Agency, §§ 7, 18 (1978).

■ Similarly, a "seller" under the UCC "means a person who sells or contracts to sell goods," Ohio Rev.Code Ann. § 1302.-01(A)(4) [UCC § 2–103(1)(d)], and only "sellers" are responsible for express or implied warranties under the UCC, Ohio Rev. Code Ann. § 1302.26–.28 [UCC § 2–313–316]. An individual's status as a seller, or merely an agent, is determined by examining the intent of the parties and the facts and circumstances of the transactions in question. *In re Sherwood Diversified*

---

2. Henry Boppel is alone in stating that the machines were first shipped to DHC, then to Staco. Boppel Deposition at 27. He is contradicted by Leroy Carver, the president of Staco, Carver deposition at 24, and other materials in the record. Even if Boppel is correct, however, it would not change the Court's eventual characterization of DHC's role in the transaction, although it would make the question closer.

The record also is not entirely clear on which parties possessed title to the machines, although it seems that, strictly speaking, title passed from Ramm to DHC to Staco. *See,* 48 O.Jur.2d Sales, § 40 (1966); Ohio Rev.Code Ann. § 1302.42 [UCC § 2–401]. Passage of title, however, is only one factor to consider in characterizing the transaction and the parties involved. *See,* text, *infra.*

*Services, Inc.*, 382 F.Supp. 1359, 1364 (S.D. N.Y.1974). Courts examining the status of a "seller" under the UCC have looked to, *inter alia,* the manufacturer's relationship with the agent/seller and ultimate consumer, which party(ies) have received compensation, possessed the goods, and effected the transfer of goods, and which party guaranteed the quality of the goods. *See, Gaha v. Taylor-Johnson Dodge, Inc.,* 53 Or.App. 471, 632 P.2d 483 (1981); *Signal Oil & Gas Co. v. Universal Oil Products,* 572 S.W.2d 320, 329–31 (Tex.1978); *Frantz, Inc. v. Blue Grass Hams, Inc.,* 520 S.W.2d 313 (Ky.Ct.App.1974); *American Container Corp. v. Hanley Trucking Corp.,* 111 N.J.Super. 322, 268 A.2d 313 (1970). For example, in *Eckstein v. Cummins,* 41 Ohio App.2d 1, 321 N.E.2d 897 (Lucas Cty. 1974), the Court held that both a car manufacturer and a local dealership were "sellers" of the car under the UCC, although it focused nearly all of its attention on the manufacturer's status.

■ Applying these principles to the facts of this case presents a close question: at various times, DHC possessed attributes of *both* an "agent" *and* a UCC "seller." Nevertheless, considering all of the factual circumstances, the Court must hold that DHC was an "agent" of Ramm, and not a "seller" under the UCC. The starting point for this conclusion is the understanding and intent of the parties: officers of both Staco and DHC contemplated that DHC would serve as a "middleman" between Staco and Ramm. DHC had other attributes of a "mere" agent: it did not quote prices, expressly guarantee the machines, or actually possess the machines, and only served as a conduit of information from Staco to Ramm. Technically, DHC did "buy" the machines from Ramm, and "sold" them to Staco. But that transaction was only to facilitate the deal between Staco and Ramm, and yielded only a 5% profit

(i.e., commission) for DHC, well below its profit margins on its other, more regular sales of Ramm equipment. While DHC was perhaps something more than a traditional agent, as opined by Leroy Carver, deposition at 46, it simply was not, for this case, an independent buyer/seller under general agency law, or a "seller" under the UCC.

For these reasons, DHC's motion seeking summary judgment is well taken, and is sustained, and Plaintiffs' similar motion must be overruled.[3]

## II. *Plaintiffs' Motion to File an Amended Complaint*

■ Plaintiffs have also moved to file an amended complaint, adding Ramm as a party-defendant, pursuant to Fed.R.Civ.P. 15(a). Ramm has moved to strike this motion, for the same reasons (i.e., forum selection clause, and service of process requirements of a treaty) raised in its (Ramm's) motion for summary judgment. As set out below, the latter motion is technically moot, although the issues raised in same are still alive. In the interim, and to clarify the record if nothing else, the Court sustains Plaintiffs' motion to file an amended complaint. *See, Roth Steel Products v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir.1983) (discussing when amendments to pleadings should be permitted). Should the issues raised in Ramm's motion for summary judgment be raised again and eventually prove to be well taken, he can then be dismissed as a party defendant. Therefore, Ramm's motion to strike is overruled.

## III. *Ramm's Motion for Summary Judgment*

Originally, Ramm moved to dismiss the third-party complaint on the basis that the aforementioned forum selection clause prevented suit against it in American courts.

---

3. Plaintiffs also moved for summary judgment on the damage issue, alleging that there existed no genuine issue of material fact regarding the extent of their damages, and submitted affidavits to that effect. Claiming to be merely an agent of Ramm, DHC stated that it had no access to information which might contradict Plaintiffs' motion on that point. Doc. # 33, pp. 14–15. The Court, of course, does not reach this issue, since DHC has no liability for the alleged breach of contract and warranty and resultant damages, if any.

This Court overruled the motion, not because it disagreed with the underlying legal theory, but due to the motion not being properly supported by authenticated documents. Ramm renewed its motion, via the summary judgment route, and later added (Doc. # 28) an additional ground in support of the motion, that service of process on him could only be made pursuant to the provisions of a treaty between the United States and West Germany. In a previous entry (Doc. # 42), this Court directed Ramm to file copies of the treaty and other relevant documents. Ramm has done so. Docs. # 44 & 45.

DHC has argued that the forum selection clause, for several reasons, should not bind the parties in the case. It did not respond to Ramm's arguments regarding the treaty. Now that DHC is no longer part of the case, the third party Defendant and the third party complaint should be dismissed as well, thus making Ramm's motion moot. Cf. Fed.R.Civ.P. 14(a); Owen Equipment and Erection Co. v. Kroger, 437 U.S. 365, 376, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978). However, now that Plaintiffs seek to sue Ramm as a Defendant, Ramm presumably would seek to reiterate both grounds raised in support of its summary judgment motion. See also, Vorhees v. Fischer & Krecke, 697 F.2d 574 (4th Cir. 1983); Richardson v. Volkswagenwerk, A.G., 552 F.Supp. 73, 78–79 (W.D.Mo.1982) (both cases discussing treaty in question). However, at this time, Ramm's motion is moot and the Court need not rule upon same.

IV. *Conclusion*

In summary, the Court overrules Plaintiffs' motion for summary judgment (Doc. # 34), and sustains DHC's motion for summary judgment (Doc. # 24). Judgment is to be entered in favor of said Defendant and, therefore, DHC is dismissed as a party defendant. Plaintiffs' motion to file an amended complaint (Doc. # 36) is sustained, and Ramm's motion (Doc. # 37) to strike the former motion is overruled. Ramm's motion for summary judgment (Doc. # 18)

is deemed moot and is not ruled upon. Once the amended complaint is filed with the Court, and if Plaintiffs can obtain service upon Ramm, then Ramm can refile the motion for summary judgment, and Plaintiffs can respond to same.

A further preliminary pretrial conference, for the purpose of setting a trial date and other relevant dates, will be held after such time as the amended complaint has been filed, service obtained upon the Defendant Ramm and said Defendant has entered an appearance.