**GEORGIA CASUALTY AND SURETY COMPANY, a Georgia corporation, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 86–1898.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1987.

Decided July 15, 1987.

Matthew R. Lawrence, Kansas City, Mo., for appellant.

Michael A. Jones, Asst. U.S. Atty., Springfield, Mo., for appellee.

Before HEANEY, McMILLIAN, and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Georgia Casualty and Surety Company (Georgia Casualty) appeals from the district court's order granting summary judgment in favor of the Government. We affirm.

In the early 1980's, the Federal Bureau of Investigation (FBI) became aware of a large automobile theft ring in Missouri. The thieves or their associates ("retaggers") concealed the stolen nature of cars by replacing the true vehicle identification numbers (VINs) with numbers from salvage vehicles that had the same make, model, and body style as the stolen cars. This process is known as "retagging" or "salvage switch." The retaggers also obtained new motor vehicle titles that showed the salvage VINs as the correct numbers for the stolen cars. With the thefts concealed, the thieves or retaggers would sell the stolen cars to innocent purchasers through various intermediaries.

To identify the criminal participants in the theft ring and to trace their activities, the FBI engaged in an undercover investigation known as Operation SOKIT. Special FBI Agent Den Ouden and Supervisory Agent Holmes developed Operation SOKIT from the FBI's Springfield, Missouri, office. Officials from FBI headquarters in Washington, D.C., later approved this investigative plan, and Agent Den Ouden supervised the operation while it was in effect. Secrecy was an essential part of the operation as planned.

In implementing the operation, FBI Agent Rindt and an FBI paid informant posed as salvage dealers, providing a salvage yard from which retaggers could purchase salvage VINs and blank motor vehicle titles. Charles Bailey and Leonard Breedlove, two of the retaggers, instructed FBI Agent Rindt and, in one instance, the FBI informant to deliver several retagged vehicles to used car dealers George Trammel and E.W. Lands for sale at an auto auction. Rindt and the informant followed the instructions by delivering six retagged vehicles from Bailey and Breedlove to either Trammel or Lands. Trammel or Lands then sold the cars to innocent purchasers through Metro Auto Auction (Metro). At that time Metro was insured by Georgia Casualty.

When Operation SOKIT went public, the FBI seized the stolen cars from the innocent purchasers and returned those vehicles to their legal owners. Georgia Casu-

alty, on behalf of Metro, reimbursed the innocent purchasers for their losses. It then brought suit against the Government under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2674, and the Tucker Act, *id.* § 1346(a)(2), seeking money damages for the insurance claims paid. First, Georgia Casualty claimed damages for the Government's asserted negligence in handling Operation SOKIT. Second, Georgia Casualty claimed damages for the Government's asserted breach of warranties through the sale of stolen motor vehicles.

The Government moved for summary judgment and filed supporting affidavits, answers to interrogatories, and excerpts from related trial testimony. Georgia Casualty filed no opposing materials to support its complaint.

Granting the Government's summary judgment motion, the district court rejected Georgia Casualty's claim under the FTCA because the court found the discretionary function exception applied. *See id.* § 2680(a). The court also held for the Government on the Tucker Act claim, concluding that no express or implied-in-fact contract existed between Metro and the Government. On appeal Georgia Casualty argues the discretionary function exception does not apply and the Government did contract with Metro to sell stolen cars.

Although Congress waived sovereign immunity under the FTCA when it authorized damage suits against the United States, *see id.* §§ 1346(b), 2674, Congress exempted several classes of tort claims from that waiver. At issue here is the discretionary function exception, which provides that the FTCA shall not apply to

[a]ny claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Id.* § 2680(a). The Supreme Court has noted that this exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental ac-

tivities from exposure to suit by private individuals." *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 808, 104 S.Ct. 2755, 2761, 81 L.Ed.2d 660 (1984).

The discretionary function exception protects from suit those governmental decisions that involve the balancing of policy considerations. *Aslakson v. United States,* 790 F.2d 688, 693 (8th Cir.1986); *see also Red Lake Band of Chippewa Indians v. United States,* 800 F.2d 1187, 1196 (D.C. Cir.1986). In other words, those decisions "grounded in social, economic, and political policy" are insulated from "judicial 'second-guessing' " by the discretionary function exception. *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2764. The exception does not encompass the ordinary day-to-day acts of governmental negligence. *Gray v. Bell,* 712 F.2d 490, 509 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984).

In determining whether the discretionary function exception applies, we must focus on the nature of the conduct at issue rather than the status of the actor. *Varig Airlines,* 467 U.S. at 813, 104 S.Ct. at 2764. "[T]he basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability." *Id.; see Bacon v. United States,* 810 F.2d 827, 829 (8th Cir.1987).

Here, Georgia Casualty asserts the Government was negligent in several ways, including its failure to notify Georgia Casualty of the FBI's proposed action with regard to the six motor vehicles and its failure to identify and seize the proceeds received by the auto thieves. At bottom, Georgia Casualty contends the FBI's decision to maintain complete secrecy in its undercover operation resulted in harm to innocent third parties for which the Government should be liable.

We must decide whether the conduct Georgia Casualty complains of involves a policy judgment protected by the discre-

tionary function exception. We believe it does. An undercover operation constitutes a "permissible means of investigation." *United States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). Because secrecy was an integral part of the undercover operation in this case, the FBI did not notify interested persons who might have jeopardized that operation with their knowledge. *See Powers v. Lightner*, 820 F.2d 818, 822 (7th Cir.1987) (Pell, J., concurring) ("[T]he Government's role* * * in the undercover operation * * * had to be kept absolutely secret to preserve the sting's success."). Here, in developing a strategy to apprehend the retaggers, the FBI had to weigh the public concern for reducing widespread criminal activity against the harm to innocent victims resulting from a covert operation. *See id.* at 822. The FBI's decision to maintain secrecy thus involved the balancing of policy considerations protected by the discretionary function exception. *See Aslakson*, 790 F.2d at 693.

We note that just before the FBI went public with Operation SOKIT it did meet with a number of insurance companies to advise them of the seizure of stolen automobiles. Georgia Casualty was not among those companies. The omission of Georgia Casualty from that meeting, however, did not affect its position. By that point in time, the innocent victims had already purchased the stolen cars and thus had parted with their money in favor of the retaggers. In addition, the means chosen by the Government to enforce the law are protected by the discretionary function exception. *Abernathy v. United States*, 773 F.2d 184, 188 (8th Cir.1985). "In the absence of a statute, there is no legally enforceable duty on the part of the [G]overnment to warn or to compensate victims of criminal activity." *Bergmann v. United States*, 689 F.2d 789, 796 (8th Cir.1982).

The FBI's policy against notifying innocent third parties of impending harm has been subject to congressional scrutiny. A legislative subcommittee has made several recommendations, including that Congress should consider amending the FTCA to provide for compensation of innocent victims.

*See* House Subcomm. on Civil and Constitutional Rights, *FBI Undercover Operations*, H.R.Doc. No. 267, 98th Cong., 2d Sess. 10, 87, 117 (1984). Further, in a case involving an undercover operation similar to Operation SOKIT, a circuit judge indicated his belief "[t]he costs of such an operation should be borne by the United States [G]overnment, not by the innocent victims." *Powers*, 820 F.2d at 825 (Wisdom, J., dissenting).

While we acknowledge the harm to innocent purchasers and Metro's insurer in this case, we cannot ignore congressional intent to protect the Government from suit through the discretionary function exception. It is not the proper role of this court to determine the wisdom of legislation. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 469, 101 S.Ct. 715, 726, 66 L.Ed.2d 659 (1981). "[W]e have no authority to substitute our views for those expressed by Congress in a duly enacted statute." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 626, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978). Because the harm to Georgia Casualty resulted from the FBI's policy of secrecy and not from the failure to follow that policy, *compare Aslakson*, 790 F.2d at 693, the district court ruled correctly in holding the Government's challenged decision involved a policy judgment currently protected by the discretionary function exception.

Georgia Casualty also argues the district court committed error in holding no express or implied-in-fact contract existed. Georgia Casualty maintains the Government was a seller of the stolen cars under the Missouri Uniform Commercial Code (UCC) and the Government breached the warranty of good title when it sold those cars. We disagree.

The Tucker Act grants federal district courts original jurisdiction concurrent with the United States Claims Court over "[a]ny * * * civil action or claim against the United States, not exceeding $10,000, in amount, founded * * * upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2). As interpreted by the Supreme Court, the Act grants jurisdic-

tion over claims based on express or implied-in-fact contracts but not over claims based on implied-in-law contracts. *Army & Air Force Exch. Serv. v. Sheehan,* 456 U.S. 728, 738 n. 10, 102 S.Ct. 2118, 2124 n. 10, 72 L.Ed.2d 520 (1982). Here, we agree with the district court's conclusion that neither an express nor implied-in-fact contract existed between Metro and the Government.

Initially, the question arises whether federal or state law should apply. *See North Side Lumber Co. v. Block,* 753 F.2d 1482, 1484 (9th Cir.), *cert. denied,* 474 U.S. 919, 106 S.Ct. 248, 265, 88 L.Ed.2d 271 (1985); *Woodbury v. United States,* 313 F.2d 291, 295 (9th Cir.1963). We note that when federal common law applies the federal court may, under certain circumstances, apply the relevant state's law as the federal rule, especially when the widely-accepted UCC is involved. *United States v. Conrad Publishing Co.,* 589 F.2d 949, 953 (8th Cir. 1978). Here, however, the parties have assumed Missouri law applies to this issue, and the district court analyzed the issue under that state's law. We do the same. *See United States v. Little Joe Trawlers, Inc.,* 776 F.2d 1249, 1251 n. 2 (5th Cir.1985).

■ A seller under the Missouri UCC is a "person who sells or contracts to sell goods." Mo.Rev.Stat. § 400.2-103(1)(d). Further, a sale is the "passing of title from the seller to the buyer for a price." *Id.* § 400.2-106(1). In this case, the district court's interpretation of Missouri law is entitled to substantial deference unless it is "'fundamentally deficient in analysis or otherwise lacking in reasoned authority.'" *Dabney v. Montgomery Ward & Co.,* 761 F.2d 494, 499 (8th Cir.) (quoting *Kansas City Power & Light Co. v. Burlington N.R.R.,* 707 F.2d 1002, 1003 (8th Cir.1983)), *cert. denied,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985). The court found the Government's role in the undercover operation did not rise to the level of a seller under Missouri law. We do not believe the court's interpretation is unreasonable.

Agent Rindt and the FBI informant had no contact with Metro representatives. In addition, Agent Rindt did not sign the vehicle titles on behalf of the Government, and he did no work on the stolen cars. Instead, the retaggers instructed Agent Rindt to place certain names on the blank titles and to deliver the stolen cars to Trammel or Lands for them to sell later. Although Trammel and Lands did turn the sales proceeds over to Agent Rindt, Rindt deducted only the commissions for his services as an intermediary. He relayed the remaining proceeds to the retaggers. Thus, Trammel and Lands were agents of the retaggers, not the Government. Like the district court, we cannot accept that anyone who has a compensated role in a transaction automatically becomes a seller under the UCC. *See Staco Energy Prods. Co. v. Driver-Harris Co.,* 578 F.Supp. 700, 703 (S.D.Ohio 1983); *see also American Container Corp. v. Hanley Trucking Corp.,* 111 N.J.Super. 322, 268 A.2d 313, 316 (1970) ("A sale is a transfer of goods for consideration, and the seller is generally the party that receives the consideration and effects the transfer.").

Plainly, the Government did not have automobiles to sell. Rather, the Government sold VINs, blank titles, and delivery services. These acts do make the Government a seller of stolen automobiles. We agree with the district court that no express contract existed between Metro and the Government.

■ Similarly, we agree with the district court that no implied-in-fact contract existed. Three elements must be present for an implied-in-fact contract to be found: mutuality of intent to contract, offer and acceptance, and actual authority on the part of the Government agent to bind the Government in contract. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed. Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). The Government's unopposed affidavits indicate Agent Rindt did not have the authority to bind the Government through a contract. The district court, however, did not reach this element. Instead, based on the unopposed affidavits and excerpts of testimony given at related criminal trials, the district court concluded that the elements of mutuality of

intent and offer and acceptance were not present. We have reviewed the record and agree with the district court.

Accordingly, we affirm the district court's order.

HEANEY, Circuit Judge, concurring.

I write separately to emphasize my belief that the cost of a Federal Bureau of Investigation (FBI) undercover operation should be borne by the United States Government, not by the innocent victims. The author of this opinion correctly states the law. I would simply go a step further and encourage the Congress to revise the law.