58 F.3d 494
 64 USLW 2078, 32 Fed.R.Serv.3d 795,
27 Bankr.Ct.Dec. 554,
Bankr. L. Rep. P 76,564,
95 Daily Journal D.A.R. 8594
 John DOE, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
In re John DOE, Debtor.
John DOE, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 Nos. 93-56367, 94-55552.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 6, 1995.
Submission Withdrawn Feb. 9, 1995.
Resubmitted June 22, 1995.
Decided June 29, 1995.
 
 Peter N. Scolney, Mark Shinderman and Jean R. Hutar, Weiss, Scolney, Spees, Danker & Shinderman, Los Angeles, CA, for plaintiff-appellant.
 Frank W. Hunger, Asst. U.S. Atty., Los Angeles, CA, Mark B. Stern, Sushma Soni, U.S. Dept. of Justice, Washington DC, for defendant-appellee.
 Appeals from the United States District Court for the Central District of California.
 Before: FERGUSON, BEEZER and NOONAN, Circuit Judges.
 NOONAN, Circuit Judge:
 
 
 1
 John Doe appeals two judgments of the district court in favor of the United States in the above cases, which we have consolidated for purposes of decision on these appeals. We reverse the district court.
 
 PROCEEDINGS
 
 2
 On June 4, 1993, Doe filed a complaint under the Federal Tort Claims Act (the FTCA) alleging that in October 1988 he began to assist the FBI in undercover work laundering money on behalf of members of the Medellin Cartel; that on November 13, 1990, he entered into a contract with the FBI by which he would be awarded a portion of the proceeds from each investigative case which he assisted; that the FBI promised him "that his identity as an informant and undercover operative would be protected at all costs"; that he assisted the FBI in luring two members of the cartel, Julio and Nacho, out of Columbia to Venezuela on the understanding with the FBI that their arrest would take place in a way that would preclude suspicion from falling on him, but that in fact the FBI arrested Julio and Nacho on a boat in Venezuela and, in order to persuade Julio and Nacho to become informants, the FBI disclosed to them that Doe had been serving as an FBI informant, thereby placing Doe, his wife and his daughter at serious risk of injury or death.
 
 
 3
 Pursuant to the FTCA Doe submitted claims to the FBI under both the FTCA and the Contract Disputes Act for $39,980,000 for damages allegedly incurred by these actions; the claims were rejected. Thereupon Doe brought his action in the district court, setting out three claims: (1) breach of the implied covenant of good faith and fair dealing by failing to maintain the confidentiality of his role in the undercover operation, "especially by disclosing plaintiff's role to Nacho and Julio for no good reason" and "unnecessarily placing plaintiff and his family's security at risk"; (2) breach of the fiduciary duty, assumed by the FBI in accepting his assistance, to avoid unnecessarily putting him and his family at risk of death or injury; and (3) breach of the contract entered into with the FBI.
 
 
 4
 The contract was attached as an exhibit to the complaint. In relevant part it provided that the FBI would request payment of an award to Doe from assets obtained through forfeiture based on information provided by him concerning violations of the criminal drug laws but that the agreement "in no way constitutes a guarantee that such an award will be made or the amount of any such award." The contract further provided that at the time which the FBI "deems appropriate" it would request the Department of Justice to "provide witness protection, relocation, and related security service in accordance with applicable Federal laws and regulations." Doe agreed, "when directed by the FBI, to testify and furnish all information in his possession" related to the investigations. Under the heading "Confidentiality" Doe agreed that he would "in no way reveal the confidentiality and sensitive nature of this investigation or identify any undercover FBI agents." No similar provision was made as to the revelation of Doe's identity. The contract further provided: "This document constitutes the full and complete agreement between Doe and the FBI. Modifications to this agreement will have no force and effect unless and until such modifications are reduced to writing and signed by all parties thereto."
 
 
 5
 On August 23, 1993, the government moved to dismiss the complaint on the ground that the district court lacked jurisdiction. Doe responded by agreeing that his contract claim should be transferred to the United States Court of Federal Claims, but contended that there were two questions of fact as to the court's jurisdiction over his tort claims. The government had argued that the complaint itself disclosed that the tort took place in a foreign country and that, therefore, the FTCA did not apply. Doe argued that the complaint did not allege that the disclosure took place in Venezuela and further argued that the disclosure of Doe's identity to Julio and Nacho took place on an American flag vessel on the high seas. In support of this argument, Doe submitted the declaration of his lawyer which stated the lawyer's belief that Julio and Nacho were taken out to sea and put upon a United States Coast Guard vessel where their interrogation and the disclosure of Doe's identity took place. Doe further argued that "the FBI agents who participated in the arrest may very well have made the decision to betray plaintiff's identity long before arriving in Venezuela ... or the agents involved in the arrest were inadequately trained for the specific operation." In either case, a "headquarters claim", Doe urged, defeated the "foreign country exception."
 
 
 6
 The district court transferred the contract claim to the United States Court of Federal Claims. The district court dismissed the FTCA claims with prejudice and entered judgment for the United States; the district court did not give reasons for its action. Doe appeals this judgment.
 
 
 7
 While the FTCA appeal was pending before this court, Doe filed his contract claim in the United States Court of Federal Claims. The government pointed out that the pending FTCA appeal deprived that court of jurisdiction. On March 11, 1994, with Doe's consent, the Court of Claims dismissed the case without prejudice for lack of jurisdiction.
 
 
 8
 Meanwhile, Doe had entered bankruptcy. The Internal Revenue Service filed proofs of claims against him for over $750,000 in back taxes. Doe filed an adversary proceeding by way of setoff, asserting the same FTCA and contract claims he had originally presented in the district court.
 
 
 9
 On the government's motion the adversary proceedings were withdrawn from the bankruptcy court to the district court and assigned to the same judge who had presided over the earlier case in the district court. Doe moved to reconsider or vacate the withdrawal, contending that he had received inadequate notice and that his claims involved core bankruptcy issues that the bankruptcy court should resolve. After a hearing the district court denied the motion to reconsider or vacate and granted the government's motion to dismiss on the ground of res judicata. Doe appeals this judgment. As noted, we have consolidated the two appeals.
 
 ANALYSIS
 The Amendability Of The Complaint In Tort
 
 10
 Under Fed.R.Civ.Proc. 15(a), "a party may amend his pleading once as a matter of course at any time before a responsive pleading is served." This court has held that "a motion to dismiss is not a 'responsive pleading' within the meaning of the Rule. Neither the filing nor granting of such a motion before answer terminates the right to amend; an order of dismissal denying leave to amend at that stage is improper." Schreiber Distributing v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir.1986). "It is of no consequence that no request to amend the pleading was made in the district court." Id.
 
 
 11
 The dissenting opinion vigorously portrays the difficulties the plaintiff faces in successfully amending his complaint to overcome the barrier of sovereign immunity as it is preserved in the Federal Tort Claims Act; indeed the dissent maintains that successful amendment is impossible. We are unwilling to anticipate what theory an ingenious but fair pleader might produce and what constellation of facts might be alleged that might overcome the bar. We take explicit issue with the dissent on one point: that the Federal Tort Claims Act does not permit a suit for any governmental action taken in the course of an international undercover operation against drugs, because, so the dissent maintains, an individual would never act in "like circumstances", and the government has waived its immunity only as to torts committed by private persons in "like circumstances." Any governmental operation is different from any private action; what is meant by "like circumstances" is analogous circumstances not identical ones. For example, even if no private person ran a lighthouse to aid navigation, the government would be liable for negligently running a lighthouse because a private person would be liable for negligently undertaking to help another; the broad analogy makes the circumstances "like"; they need not be "the same." Indian Towing Co. v. United States, 350 U.S. 61, 64-66, 76 S.Ct. 122, 124-25, 100 L.Ed. 48 (1955). A private company might well be liable in tort if, in the course of seeking information about the products of an unscrupulous competitor, it exposed its own employee to the risk of torture or death at the latter's hands. We do not mean that this illustration is the case at bar; it is merely suggestive of how tortious private action could be analogous to tortious governmental action.
 
 
 12
 In dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Cook, Perkiss & Liehe v. N. Cal. Collection Service, 911 F.2d 242, 247 (9th Cir.1990). As in Schreiber, the record here contains "no indication of such a determination." See also Bonanno v. Thomas, 309 F.2d 320, 322 (9th Cir.1962). In fact, the district court provided no justification for its dismissal of Doe's tort claims at all. "Because the district court did not determine, nor can we conclude, that the allegation of other facts could not possibly cure the deficiencies in [Doe's] complaint, the district court abused its discretion in dismissing [the complaint] with prejudice." Schreiber, 806 F.2d at 1401.
 
 
 13
 We conclude, therefore, that the district court erred in dismissing Doe's tort claims without leave to amend and in not granting Doe an opportunity to conduct discovery into the relevant jurisdictional facts.
 
 The Bankruptcy Setoff
 
 14
 As the tort case is not res judicata, the bankruptcy set-off cannot be decided on that basis. Doe's contention that the district court withdrew the case from the bankruptcy court without notice to him states a criticism that was met by the district court's subsequent hearing on Doe's motion to reconsider. But, as the district court erroneously applied res judicata, the possibility of setoff is still open. A question is presented that is not governed by the FTCA and that is not to be decided by the terms and defenses provided in the FTCA.
 
 
 15
 By filing a claim in the bankruptcy case, the United States has waived sovereign immunity to the extent of that claim. 11 U.S.C. Sec. 106, "Waiver of Sovereign Immunity," provides:
 
 
 16
 (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.
 
 
 17
 (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.
 
 
 18
 Doe does not argue, nor does it appear, that his tort claims against the FBI arose from the same transaction or occurrence as the IRS's claims against him. Section 106(a) does not apply; Doe may not obtain an affirmative recovery against the United States in the bankruptcy action. The question is whether, under Sec. 106(b), Doe may offset any judgment he may obtain versus the FBI against the IRS's liquidated tax claims.
 
 
 19
 The waiver of immunity is only as to the governmental unit making the claim. The difficult question is whether the United States as a whole is a "governmental unit" for purposes of the statute or whether each agency of the United States must be taken separately, so that a debt of the FBI could not be setoff against the claim by the IRS.
 
 
 20
 The definitional provisions of the bankruptcy code are not helpful. A governmental unit is defined as:
 
 
 21
 United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.
 
 
 22
 11 U.S.C. Sec. 101(27). The definition merely restates the problem.
 
 
 23
 On this appeal the United States has taken the position that "governmental unit" refers to the United States as a whole and not to particular agencies. Instructed by this court to consult the Solicitor General's office, the IRS and other federal agencies which are frequent claimants in bankruptcy, the United States has repeated this position, noting only that certain federal agencies such as the Federal Deposit Insurance Corporation are viewed as separate governmental units when they act in their private receivership capacity. Otherwise, the United States represents itself as ready to be considered as a single, unitary debtor.
 
 
 24
 The United States reaches this position out of a commendable sense of fairness and reciprocity because it often seeks to be treated as a single unitary creditor under the offset provisions of 11 U.S.C. Sec. 553. The United States has been successful in asserting such a position as a creditor. See e.g., Luther v. United States, 225 F.2d 495, 498 (10th Cir.1954). It is also treated as a single creditor when it asserts priority for its debt. See e.g., Small Business Administration v. McClellan, 364 U.S. 446, 450, 81 S.Ct. 191, 194-95, 5 L.Ed.2d 200 (1960).
 
 
 25
 Faced with these authorities and this reasoning, we now hold that as a matter of law, for purposes of waiver of sovereign immunity and setoff under 11 U.S.C. Sec. 106, all agencies of the United States, except those acting in some distinctive private capacity, are a single governmental unit.
 
 
 26
 In the bankruptcy setoff action the United States has waived sovereign immunity to the extent of the IRS's claim against the estate. If Doe is able to prevail against the United States on his tort claims, the IRS's claims against the bankruptcy estate may be reduced by the liquidated amount of Doe's tort judgment. Doe's FTCA complaint is still deficient because it does not indicate where the alleged tort occurred. On remand, Doe should have the opportunity to amend his complaint to state where he alleges the tort took place.
 
 
 27
 As the tort claim and the bankruptcy setoff are still pending in the district court, it is inappropriate at this time to send the contract claim back to the Court of Claims.
 
 
 28
 REVERSED and REMANDED for proceedings consistent with this opinion.
 
 FERGUSON, District Judge, dissenting:
 
 29
 I dissent from that part of the majority opinion entitled "The Amendability Of The Complaint In Tort." The plaintiff is unable to plead any set of circumstances where the government could be liable in tort for its agents disclosing on the high seas that the plaintiff was participating in an undercover government investigation of money-laundering activities of the international Medellin drug cartel when the disclosure was made in order to persuade two members of the cartel to become informants for the Federal Bureau of Investigation ("FBI"). The majority have remanded the case to the district court in order to allow the plaintiff the opportunity to redraft his complaint so as to avoid the various exceptions to the Federal Tort Claims Act ("FTCA") raised by the government. However, where redrafting could not cure the pleading, it is proper for the district court to dismiss the complaint without allowing the plaintiff to amend. Frigard v. United States, 862 F.2d 201, 204 (9th Cir.1988), cert. denied, 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989). No matter how the plaintiff portrays the FBI's conduct in revealing his identity, such conduct was protected by the discretionary function exception to the FTCA. Because he cannot redraft his claims to avoid the discretionary function exception, the district court properly dismissed his complaint with prejudice. As in Frigard, the bar of sovereign immunity is absolute and the plaintiff cannot redraft his claim to avoid the exception to the FTCA. Id.
 
 
 30
 The FTCA provides a limited waiver of the federal government's sovereign immunity when its employees are negligent within the scope of their employment. Under the FTCA, the government can only be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. Sec. 1346(b). Thus, the FTCA does not apply to conduct that is uniquely governmental, that is, incapable of performance by a private individual. The majority, in discussing the distinction between private acts and governmental conduct at pages 496-97 of their opinion, have failed to fully describe the incident that the plaintiff claims results in a cause of action under the Federal Tort Claims Act. That incident is the disclosure of the name of a government informant in an attempt to obtain other informants in foreign countries to act for the government in intelligence gathering against an international drug cartel. The majority have avoided trying to describe any case that would make it a tort by a private person.
 
 
 31
 Furthermore, the FTCA is limited by a number of exceptions pursuant to which the government is not subject to suit, even if a private employer could be liable under the same circumstances. These exceptions include the discretionary function exception, which bars a claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. Sec. 2680(a).
 
 
 32
 In order to determine whether the FBI's conduct falls within the discretionary function exception, the courts must apply a two-part test established in Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958-59, 100 L.Ed.2d 531 (1988). See Kennewick Irrigation District v. United States, 880 F.2d 1018, 1025 (9th Cir.1989). First, the question must be asked whether the conduct involved "an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (quotation omitted). This requirement is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958. Once the element of judgment is established, the next inquiry must be "whether that judgment is of the kind that the discretionary function exception was designed to shield" in that it involves considerations of "social, economic, and political policy." Gaubert, 499 U.S. at 322-23, 111 S.Ct. at 1273. No matter how the plaintiff drafts his tort claims, it is clear that the FBI's conduct in revealing his identity meets both parts of the Berkovitz test.
 
 
 33
 Under the first part of the Berkovitz test, the plaintiff has failed to point to any federal statute, regulation, or policy which specifically prohibited the FBI from revealing his identity to those whom the FBI was trying to recruit as informants.[1] The plaintiff had ample opportunity prior to the filing of the government's motion to dismiss to conduct discovery on relevant FBI guidelines or other applicable laws. See St. Clair v. City of Chico, 880 F.2d 199, 202 (9th Cir.), cert. denied, 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989) (where plaintiff had the opportunity to conduct discovery prior to filing of motion to dismiss, the district court may dismiss the complaint without allowing additional time for discovery); Berardinelli v. Castle & Cooke Inc., 587 F.2d 37, 39 (9th Cir.1978) (same). Nonetheless, the plaintiff has not disputed the government's assertion that the FBI agents exercised their judgment in choosing to reveal his identity in order to convince two members of the drug cartel to become informants. He merely claims that the FBI agents "unnecessarily" disclosed his identity. Accordingly, the challenged conduct meets the first part of the Berkovitz test.
 
 
 34
 In applying the second part of the Berkovitz test, we are required to keep in mind the context of the FBI's conduct: the decision to reveal the plaintiff's identity occurred during the collection of intelligence outside the United States against an international drug enterprise whose activities are contrary to the welfare and national security interests of the United States. Given the discretion involved in an undercover operation of such enormity and complexity, even "day-to-day" decisions in the course of carrying out the operation would involve the balancing of broad, policy-based considerations. Gaubert, 499 U.S. at 325, 111 S.Ct. at 1275 ("[d]iscretionary conduct is not confined to the policy or planning level"). An analysis of the full range of pleading possibilities to which the plaintiff could resort in drafting his tort claims demonstrates that, no matter how we look at the FBI's conduct, it involved discretionary judgments based on social, economic, and political policy.
 
 
 35
 The plaintiff tries to mask the discretionary nature of the intelligence activity in which the FBI was engaged when it committed the challenged conduct by arguing that the FBI was engaged in "law enforcement" and that law enforcement decisions do not involve generalized, policy-based choices. See Garcia v. United States, 826 F.2d 806, 809 (9th Cir.1987). The flaw in the plaintiff's argument is demonstrated by the statute. 28 U.S.C. Sec. 2680(h) provides that the government is not liable when any of its agents commits the torts of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. However, it also provides an exception. The government is liable if a law enforcement officer commits assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. The government is not liable if the claim against law enforcement officers is for libel, slander, misrepresentation, deceit, or interference with contract. Congress has not waived the government's sovereign immunity against all law enforcement acts or omissions. Garcia was a case involving a shooting by an Immigration and Naturalization Service officer, an activity about which Congress specifically waived sovereign immunity. Assault and battery and the other offenses set forth for law enforcement liability of course do not involve the broad policy-based considerations that enter into the discretionary function exception. The acts which are described in this case, however, do not resemble in any degree the activities for which law enforcement officers could be liable.
 
 
 36
 Indeed, some law enforcement decisions do involve broad policy-based considerations and therefore fall within the discretionary function exception. In Georgia Casualty and Surety Company v. United States, 823 F.2d 260, 263 (8th Cir.1987), which was cited with approval by this court in Frigard, 862 F.2d at 203, the Eighth Circuit stated that "the means chosen by the Government to enforce the law are protected by the discretionary function exception" (emphasis added). See also Horta v. Sullivan, 4 F.3d 2, 21 (1st Cir.1993) ("although law enforcement agents have a mandatory duty to enforce the law, decisions as to how best to fulfill that duty are protected by the discretionary function exception"). Accordingly, the court held that the discretionary function exception protected the government where the FBI, upon weighing "the public concern for reducing widespread criminal activity against the harm to innocent victims," chose to maintain secrecy in an operation. Georgia Casualty, 823 F.2d at 263. In foregoing secrecy in the case at hand, the FBI had to balance exactly the same types of policy-based considerations.
 
 
 37
 In this case, the FBI agents made a decision not to arrest the two cartel members, but instead to recruit them as FBI informants by revealing that the plaintiff, one of their allies, had already become an informant. The plaintiff could redraft his complaint to state that this conduct was the FBI's means of enforcing the law through the collection of intelligence. However, his attempt would be to no avail. In Frigard, 862 F.2d at 203, this court held that the collection of intelligence information by the Central Intelligence Agency "involves elements of judgment and choice and strong public policy considerations" and, therefore, "the decision as to how best to fulfill this duty is within its discretion." In the case at hand, the FBI's complaint falls squarely within the understanding of intelligence gathering discussed by this court in Frigard.
 
 
 38
 Similarly, an attempt by the plaintiff to redraft his complaint in order to focus on the FBI's use and recruitment of its informants would be to no avail. His challenge would necessarily be to the propriety of a strategic law enforcement decision as to how to deal with an informant during the course of a massive international undercover operation, and specifically the propriety of the means used to enlist international drug dealers to be FBI informants. Although this court has not encountered the precise issue, the Eleventh Circuit recently stated that, "[t]he decision to use a particular person as an informant is inextricably intertwined in the policy decision to use informants for law enforcement purposes." Ostera v. United States, 769 F.2d 716, 718 (11th Cir.), reh'g denied, 775 F.2d 304 (11th Cir.1985). Reasoning that the "acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable" under the FTCA, the court in Ostera held that the decision to release a particular informant from prison was protected by the discretionary function exception. Id. (quoting Dalehite v. United States, 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953)). Here the decision to reveal an informant's identity in order to recruit other informants, where no statute or regulation prohibited such conduct, was inextricably intertwined with the policy-based decision to use the plaintiff as an informant and to recruit the two cartel members as informants.
 
 
 39
 Finally, an attempt by the plaintiff to redraft the complaint to focus on the FBI's failure to train its agents in the proper recruitment of informants would also be to no avail. Absent specific statutes or regulations, where the particular conduct is discretionary, the failure of the government properly to train its employees who engage in that conduct is also discretionary. See, e.g., Flynn v. United States, 902 F.2d 1524 (10th Cir.1990) (failure of National Park Service to train its employees as to proper use of emergency equipment was discretionary).
 
 
 40
 No amount of subsequent pleading can change the fact that the FBI had to balance considerations grounded in social, economic, and political policy in choosing whether and how to collect intelligence information during its investigation of the Medellin cartel. No matter how the plaintiff tries to portray it, the FBI's conduct was within the discretionary function exception of the Federal Tort Claims Act. A court review of the decision to attempt to recruit two members of the cartel to become government informants in furtherance of an investigation encroaches upon the FBI decision-making process.
 
 
 41
 Moreover, the FTCA provides that the government will be liable in the same manner and to the same extent as a private individual under like circumstances. 28 U.S.C. Sec. 1346(b). The plaintiff has not cited any authority whatever that a private person would be liable to him if the acts alleged were performed under the same circumstances by a private person. The alleged tort of disclosure here was part of an international intelligence gathering activity performed on the high seas. The FBI's conduct in this case was uniquely governmental: no private individual can lawfully engage in international government intelligence involving the national welfare. Thus, the FBI's liability "is not akin to that of a 'private individual under like circumstances.' " Woodbridge Plaza v. Bank of Irvine, 815 F.2d 538, 543 (9th Cir.1987) (quoting 28 U.S.C. Sec. 2674) (FDIC's liability is unlike that of a private individual under California law). See also Caban v. United States, 728 F.2d 68 (2d Cir.1984) (immigration officers have materially different duties than do private citizens, and therefore no FTCA liability exists, even if a private person could be liable for wrongfully detaining plaintiff). "[S]tatutes waiving the sovereign immunity of the United States must be 'construed strictly in favor of the sovereign.' " Gasho v. United States, 39 F.3d 1420 (9th Cir.1994) (quoting McMahon v. United States, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951)). Because there is no "persuasive analogy with private conduct" in this case, the FTCA cannot apply to the plaintiff's tort claims. See Woodbridge, 815 F.2d at 543 (quotation omitted).
 
 
 42
 Given both the discretionary and uniquely governmental nature of the FBI's conduct in this case, the remand to the district court is clearly unwarranted, a waste of judicial resources, and I therefore dissent.
 
 
 
 [1]
 Indeed, the majority recognize that even the plaintiff's contract with the FBI did not prohibit the FBI from revealing his identity